Dorothy WEBSTER, Appellant–Plaintiff,

v.

PEKIN INSURANCE COMPANY and Thomas DeShone, Appellees–Defendants.

No. 20A03–9812–CV–490.

Court of Appeals of Indiana.

July 23, 1999.

Jeffrey J. Stesiak, South Bend, for appellant.

Timothy J. Walsh, Mishawaka, for appellee Pekin Insurance Company.

Robert E. Kabisch, Fort Wayne, for appellee Thomas DeShone.

## OPINION

MATTINGLY, Judge

Dorothy Webster appeals the trial court's grant of summary judgment in favor of Pekin Insurance Company ("Pekin") and Thomas DeShone.[1] We restate the issues on appeal as follows:

1. Whether Pekin's obligation to pay Webster underinsured motorist benefits under an insurance policy issued by Pekin ("the Pekin policy") was terminated by Webster's execution of a document releasing the underinsured motorist where Pekin failed to exercise its right of subrogation against the underinsured motorist pursuant to Ind.Code § 27–7–5–6(b); and

2. Whether a genuine issue of material fact is presented by Webster's claim that Pekin and DeShone breached their duty to deal with Webster in good faith.

Reversed and remanded with instructions to enter partial summary judgment for Webster and against Pekin.

**FACTS AND PROCEDURAL HISTORY**

On September 7, 1994, Webster was driving her vehicle on a West Virginia highway when a vehicle driven by Ryan Childers hit Webster's vehicle head-on. Webster sustained extensive and permanent injuries as a result of this collision. Webster sought to recover for her injuries and, through her attorney, attempted to negotiate a settlement with Childers' insurer, State Farm Insurance ("State Farm").

On December 14, 1994, Webster's attorney sent Pekin a letter that stated in part:

I have been advised by Mr. David Borman of State Farm Insurance Company that they are willing to tender the policy limits to the Websters' [sic] in order to release their insured. Indiana Code § 27–7–5–6 provides that once you are informed of this bona fide offer you have thirty (30) days to either advance pay this amount to the Websters' [sic] or give them permission to accept this offer. If you do not respond within the thirty (30) day time period you are deemed to have given the Websters' [sic] permission to accept the offer in exchange for a full and complete release of the wrongdoer. Additionally, you will loose [sic] any and all subrogation rights which may have existed. We look forward to working with you in regards to

1. DeShone's Request for Oral Argument is hereby denied.

the underinsured portion of this claim. We anxiously await your response.

R. at 428. On December 16, 1994, Webster's attorney sent another letter to Pekin which stated:

Enclosed you will a[sic] copy of the letter from State Farm Insurance Company offering the policy limits to Mrs. Webster. We look forward to hearing from you in the near future regarding your decision whether or not we may accept this offer.

*Id.* at 429. Pekin did not respond to either of these letters.

Webster and State Farm ultimately entered into a settlement [2] through which Webster received State Farm's policy limit of $100,000. On February 2, 1995, Webster executed a document entitled "Release," which stated that Webster released Childers from

any and all claims, demands, damages, actions, causes of action or suits of any kind or nature whatsoever, and particularly on account of all injuries, known and unknown, both to person and property, which have resulted or may in the future develop from an accident which occurred on or about [September 7, 1994.]

*Id.* at 277.

At the time of the collision, Webster was insured under a Pekin policy which had been sold to her by DeShone, Webster's insurance agent. The Pekin policy provided underinsured motorist coverage. It is undisputed that Childers, under the policy's terms, was the driver of an underinsured motor vehicle. Webster, having received $100,000 through her settlement with State Farm, sought further compensation for her injuries by initiating an underinsured motorist claim under the Pekin policy.[3] Through a letter dated April 3, 1996, Pekin denied Webster's claim. The letter states in part:

Our review of your settlement with State Farm ... indicates that at the time of this settlement you signed a Release of All Claims form which released Ryan Childers ... from any further legal liability. The

Underinsured Motorist coverage indicates that you are able to recover from Pekin ... what you could legally recover from the wrongdoer, subject to the limits of coverage and other policy provisions. The release signed on February 2, 1995 limits any further legal recovery, therefore [sic] would eliminate any claim under the Uninsured [sic] Motorist coverage.

*Id.* at 279.

Subsequently, through letters respectively dated June 10, 1996 and August 29, 1996, Webster demanded that Pekin pay her underinsured motorist benefits. Pekin did not pay Webster the requested benefits. On September 6, 1996, Webster filed a Complaint, Count I of which alleged that Pekin breached its insurance contract with Webster and Count II of which alleged that Pekin and DeShone breached their duty to deal with Webster in good faith.

On November 25, 1997, DeShone filed a motion for summary judgment. Both Webster and Pekin filed responses to DeShone's motion. The following passage from the chronological case summary indicates that the trial court, after holding a hearing on the summary judgment motion, postponed its ruling pending submission of additional authority by the parties:

The court having reviewed the briefs and arguments presented in this cause now finds that a substantial issue which may dispositive [sic] this motion exists, which was not addressed by any of the parties at the hearing on the motion for summary judgment.... The court indicates that it would appears [sic] from the release executed that the same was a general release and may and/or should have released all of the parties including the defendants from any further claims as a result of this accident. The same not having been addressed the court determines that this issue must be resolved prior to ruling on the pending motion for summary judgment. Parties given 30 days to file citation of authority on the issue of the release.

---

2. Our review of the record does not reveal the date on which the agreement to settle was made.

3. The Pekin policy provided underinsured motorist coverage of $300,000 per person and $500,000 per accident.

*Id.* at 8. After the parties submitted the specified authority, the trial court granted summary judgment in favor of Pekin and DeShone, issuing an order that states in part:

> COMES now the Court, on Defendant Thomas DeShone's Motion for Summary Judgment, and having heard argument and considered the materials submitted on behalf of and in opposition to said Motion, now orders that Summary Judgment be GRANTED *sua sponte* on the issue of release on behalf of both defendants. . . .
>
> . . . Summary judgment is appropriate in this case in that all parties had knowledge of and addressed the issue of release, said issue is dispositive of other material facts and allegations at issue, and Defendants are entitled to judgment as a matter of law.
>
> . . . .
>
> . . . [T]he Court now finds that [DeShone's] Motion be granted . . . because Plaintiff's execution of the release extinguished her right to further recovery from the accident.
>
> There is a long standing principle of law which holds that an insured's right to recover under his or her policy is destroyed if the tortfeasor is released prior to settlement under the policy. The rationale behind such a rule is that since the insurer can only possess the rights which its insured possesses, the insured's release of a torfeasor [sic] deprives an insurer of its subrogation rights. In the absence of language protecting the insurer's right of subrogation in the insurance contract, Indiana has codified this right into law.
>
> Although many cases involving the insured's release of the tortfeasor are barred as a result of these principles, courts also defer to language contained in the insurance contract. . . .
>
> Insurance contracts are subject to the same rules of construction as any other contract and are often interpreted by a court for purposes of summary judgment. Where the insurance contract is unambiguous in its terms, it must be enforced accordingly, even when it limits an insurer's liability. The underinsured motorist provision in Plaintiff's insurance contract states that Defendant, Pekin Insurance, provides coverage for and will pay "all sums the 'insured' is legally entitled to recover . . . from the owner or driver of an 'uninsured motor vehicle' or an 'underinsured motor vehicle.'" Such terms are unambiguous and specifically limit the coverage offered under the uninsured and underinsured motorists policy owned by Plaintiff. By releasing the original tortfeasors from any further liability as a result of the automobile collision from which the injury occurred, Plaintiff relinquished any legal rights she may have had to recover further sums from the accident.
>
> Like the situation in *Hockelberg* [*v. Farm Bureau Insurance Co.*, 407 N.E.2d 1160 (Ind.Ct.App.1980)], payment under Plaintiff's policy in this case is not dependent upon any amount Pekin is or may be able to recover through subrogation, however the language of the provision does limit Pekin's duty to pay when the insured does not have any legal rights of recovery. Plaintiff has put herself in a position where she is excluded from coverage pursuant to the terms of the policy. As a result, Pekin is not under obligation to pay any sums under the "Uninsured and Underinsured Motorist" provisions of the insurance policy which is the subject of Plaintiff's lawsuit.

*Id.* at 454–58 (citations omitted). Webster now appeals.

## STANDARD OF REVIEW

■ This court applies the same standard as the trial court when it reviews the grant or denial of a summary judgment motion. *Anderson v. Yorktown Classroom Teachers Ass'n*, 677 N.E.2d 540, 543 (Ind.Ct.App.1997). When the designated materials show that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law, we will affirm the grant of a summary judgment motion. *See Claxton v. Hutton*, 615 N.E.2d 471, 473 (Ind.Ct.App. 1993). As we construe the evidence in the nonmovant's favor, doubts about whether a genuine issue of material fact exists are resolved against the motion's proponent. *See*

*Roessler v. Milburn,* 692 N.E.2d 1377, 1379 (Ind.Ct.App.1998). A genuine issue of material fact exists where facts concerning an issue that would dispose of the litigation are in dispute or where the undisputed facts are able to support conflicting inferences on such an issue. *See Bastin v. First Ind. Bank,* 694 N.E.2d 740, 747 (Ind.Ct.App.1998), *reh'g denied, trans. denied.*

## DISCUSSION AND DECISION

1. *Obligation to Pay Underinsured Motorist Benefits*

■■■ The Pekin policy contains the following coverage provision:

> We will pay all sums the "insured" is legally entitled to recover as compensatory damages from the owner or driver of an ... "underinsured motor vehicle."

R. at 405. Pekin's argument on appeal centers around the relationship between this coverage provision and the release document executed by Webster. Pekin appears to argue that its obligation to pay Webster underinsured motorist benefits was terminated by her execution of the release document because (1) the coverage provision obliges Pekin to pay only that amount which Webster is legally entitled to recover from Childers and (2) upon Webster's execution of the release document, Childers became one from whom Webster was not legally entitled to recover. Pekin's argument appears to rest on the premise that Webster, to be "legally entitled to recover," is required to have a viable cause of action against Childers *at the time* she seeks underinsured motorist benefits.

■■■ We observe that Pekin, pursuant to Ind.Code § 27–7–5–6(b), has forfeited its right of subrogation against Childers. That statutory provision provides:

> An insurer providing underinsured motorist coverage does not have a right of subrogation against an underinsured motorist if:
>
> > (1) the insurer has been provided with a written notice that:
> >
> > > (A) informs the insurer of the existence of a bona fide offer of agreement or settlement between its insured and the underinsured motorist; and

> > > (B) includes a certification of the liability coverage limits of the underinsured motorist; and
> >
> > (2) the insurer fails to advance payment to the insured in an amount equal to the amount provided for in the offer of agreement or settlement within thirty (30) days after the insurer receives the notice described in subdivision (1).
>
> However, an insurer that, under the circumstances described in subdivision (1), advances payment to the insured in an amount equal to the amount provided for in the offer of agreement or settlement, has full rights of subrogation as provided in its policy or endorsement affording the underinsured motorist coverage.

It is undisputed in this case that Webster complied with the requirements of Ind.Code § 27–7–5–6(b). Through her letter of December 14, Webster notified Pekin that State Farm was willing to tender its $100,000 policy limit to Webster, advised Pekin of its subrogation rights under Ind.Code § 27–7–5–6(b) and submitted her claim for underinsurance benefits. Pekin failed to respond. Pursuant to Ind.Code § 27–7–5–6(b), Pekin thus lost its right of subrogation against Childers by failing to advance $100,000 to Webster. Because Pekin lost this right of subrogation, Pekin possessed no right of action against Childers, regardless of whether Webster possessed one. As such, Webster's entitlement to coverage does not depend on whether a viable cause of action against Childers does or does not exist; in either event, Pekin would be unable to proceed against Childers, and Webster would remain "legally entitled to recover."

Moreover, Webster's underinsurance coverage would be rendered illusory by Pekin's interpretation of the "legally entitled to recover" provision. In this regard, we note that the Pekin policy contains the following "exhaustion" provision:

> If this insurance provides a limit in excess of the amounts required by the financial responsibility law of Indiana, we will pay only after all liability bonds or policies have been exhausted by judgments or payments.

R. at 23. Under this provision, Pekin was required to pay underinsurance benefits only after State Farm's policy had been exhausted by Webster. Under most, if not all, circumstances, Webster's exhaustion of State Farm's policy through means of settlement could not have been achieved without a release of Childers.[4] Thus, the exhaustion provision essentially required Webster to release and thus extinguish her cause of action against Childers prior to recovering underinsurance benefits from Pekin.

Pekin interprets the "legally entitled to recover" provision in a way that would require Webster to have a viable cause of action against Childers before she could recover underinsurance benefits. The effect of such an interpretation would be to make Webster's recovery of benefits subject to conflicting requirements. In essence, the "legally entitled to recover" provision would require Webster to preserve her cause of action against Childers while the exhaustion provision would require her to destroy it. Coverage would be illusory under these circumstances, as it would be impossible for Webster to fully satisfy the Pekin policy's terms and thereby recover benefits. *See Jones v. State Farm Mut. Auto. Ins. Co.*, 635 N.E.2d 200, 202 (Ind.Ct.App.1994) (observing that illusory coverage has been defined as that for which the insured paid a premium but from which he would not be paid benefits under any reasonably expected circumstances).

That illusory coverage results from Pekin's interpretation of the phrase "legally entitled to recover" is also apparent in light of the purpose served by underinsurance benefits. Underinsurance coverage exists to allow an insured, upon his settlement with an underinsured motorist, to recover underinsurance benefits up to an amount corresponding to the difference between the limit of his coverage and what he recovered in settlement from the underinsured motorist. It follows that the amount of benefits to which the insured is entitled normally cannot be determined until the insured settles with and releases the underinsured motorist. But if, as Pekin suggests, Webster must have a viable cause of action against Childers, the underinsured motorist, before she may recover benefits, then she would be required to avoid settlement with Childers and thus could never demonstrate the amount of benefits to which she is entitled. Coverage would be illusory under these circumstances. *See id.*

We therefore reject Pekin's interpretation of the phrase "legally entitled to recover."[5] As a result, Webster's execution of the release document did not terminate Pekin's obligation to pay Webster underinsured motorist benefits under the Pekin policy. Accordingly, we conclude that Webster is "legally entitled to recover" and is thus eligible to receive underinsured motorist benefits from Pekin. In light of this conclusion, we hold that it was error for the trial court to enter summary judgment in favor of Pekin and DeShone. Also, because Webster's eligibility for underinsured motorist benefits has been established, Pekin is liable to Webster for such benefits. We therefore direct the trial court to enter partial summary judgment for Webster and against Pekin to the effect that Pekin is liable to Webster for underinsured motorist benefits. The amount of underinsured motorist benefits to which Webster is entitled, if any, is to be determined by the trier of fact.[6]

4. Most insurers will require that their insured be released in exchange for payment. We do not believe that resort to a fiction such as a "Covenant Not to Execute" or a "Covenant Not to Sue" is necessary in order to allow an injured person to *settle* with an underinsured motorist's insurance carrier without losing the ability to recover underinsured motorist benefits under his or her own policy.

5. Pekin seems to suggest that the outcome of this case should be controlled by *Sullivan v. American Cas. Co. of Reading, Pa.*, 582 N.E.2d 890 (Ind.Ct.App.1991). This decision, however, was vacated by our supreme court, *see Sullivan v. American Cas. Co. of Reading, Pa.*, 605 N.E.2d 134 (Ind.1992), and is therefore without precedential value. *See Barth v. Barth*, 693 N.E.2d 954, 958 n. 3 (Ind.Ct.App.1998), *trans. denied.*

6. The Pekin policy provides coverage of $300,000 per person. However, the amount of underinsurance benefits that Webster may recover from Pekin is limited by the following provision of the Pekin policy: "The Limit of insurance under this coverage shall be reduced by all sums paid or payable by or for anyone who is legally responsible...." R. at 24. Accordingly, the total

### 2. Webster's Claim of Breach of the Duty to Deal in Good Faith

In *Erie Ins. Co. v. Hickman*, 622 N.E.2d 515 (Ind.1993), our supreme court recognized a cause of action for the tortious breach of an insurer's duty to deal with its insured in good faith. As stated in *Erie:*

> The obligation of good faith and fair dealing with respect to the discharge of the insurer's contractual obligation includes the obligation to refrain from (1) making an unfounded refusal to pay policy proceeds; (2) causing an unfounded delay in making payment; (3) deceiving the insured; and (4) exercising any unfair advantage to pressure an insured into a settlement of his claim.

622 N.E.2d at 519.

DeShone apparently contends that he is entitled to summary judgment on Webster's claim that he breached his duty to deal with Webster in good faith. We disagree. Webster's complaint alleges in part that DeShone, in late 1995, promised to pay $200,000 in underinsured motorist benefits. Because these benefits were not received by Webster, and because the deceiving of an insured may support an action for breach of the duty to deal in good faith, *see id.*, a genuine issue of material fact exists as to whether DeShone deceitfully promised to pay Webster $200,000 in underinsured motorist benefits.[7] Therefore, the trial court erred in entering summary judgment in favor of DeShone.

### CONCLUSION

Webster is "legally entitled to recover" from Childers under the Pekin policy and is therefore eligible to receive underinsured motorist benefits from Pekin. A genuine issue of material fact exists as to Webster's claim that DeShone breached the duty of good faith. The trial court's entry of summary judgment is reversed, and this cause is remanded to the trial court with instructions to enter partial summary judgment for Webster and against Pekin to the effect that Pekin is liable to Webster for underinsured motorist benefits in an amount to be determined by the trier of fact.

Reversed and remanded with instructions.

SULLIVAN and RILEY, JJ., concur.

**W.T.J., Appellant–Defendant,**

v.

---

amount of underinsurance benefits for which Pekin could be liable (i.e., $300,000) may be offset by the amount Webster received as a result of her settlement with State Farm (i.e., $100,000). As a result, $200,000 is the maximum amount of coverage for which Pekin could be liable to Webster. *See also Medley v. American Econ. Ins. Co.*, 654 N.E.2d 313, 315 (Ind.Ct.App.1995) (recognizing an insurer's right to set-off under similar circumstances).

7. We do not decide whether there exist additional issues of material fact which preclude summary judgment on Webster's claim that the duty of good faith was breached.