Elmer E. **MILES** and Mary S. Miles, Appellants–Defendants,

v.

David **CHRISTENSEN** and Jo Ann Christensen as Personal Representatives of the Estate of Jason Christensen, Appellees–Plaintiffs.

No. 52A05–9907–CV–311.

Court of Appeals of Indiana.

Feb. 29, 2000.

---

Kent M. Frandsen, Robert J. Donahue, Parr Richey Obremskey & Morton, Lebanon, Indiana, Attorneys for Appellants.

Kevin P. Farrell, Cline Farrell Christie & Lee, Indianapolis, Indiana, Attorney for Appellees.

## OPINION

MATTINGLY, Judge

Appellants–Defendants Elmer E. Miles and Mary S. Miles ("the Mileses") bring an interlocutory appeal of the trial court's order denying their motion for summary judgment. They raise one issue that we restate as whether owners of rural land abutting a public roadway owe a duty to care for or remove decaying or dead trees located on their land so as to protect people traveling on the public roadway.

We affirm.

## FACTS AND PROCEDURAL HISTORY

At the time of the events relevant to this appeal, the Mileses owned property abutting the south side of Indiana State Road 124 and approximately one mile east of the City of Peru. On March 13, 1995, as twenty-one-year-old Jason Christensen ("Jason") was riding a motorcycle eastbound on State Road 124, a dead elm tree, which was located on the Mileses' property, fell

onto the road and struck Jason. As a result, Jason sustained massive head injuries and died. The tree had been dead for years and was visible from the perimeter of the property.

On June 7, 1996, David Christensen and Jo Ann Christensen ("the Christensens"), as personal representatives of the estate of their son Jason, filed a complaint against the Mileses for Jason's wrongful death. In that complaint, the Christensens alleged the Mileses were negligent in failing to maintain their real estate in a reasonably safe condition and in failing to inspect their land and correct the danger caused by dead or dying trees. On January 29, 1998, the Mileses filed a motion for summary judgment, claiming in part that they owed no duty of care to Jason and thus could not have incurred liability in this cause. On July 20, 1998, the trial court denied the Mileses' motion for summary judgment, and this interlocutory appeal ensued.[1]

### STANDARD OF REVIEW

When reviewing the grant or denial of a summary judgment motion, this court applies the same standard as the trial court. *Webster v. Pekin Ins. Co.,* 713 N.E.2d 932, 935 (Ind.Ct.App.1999). When the designated materials show that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law, the grant of a summary judgment motion will be affirmed. *Long v. Dilling Mechanical Contractors, Inc.,* 705 N.E.2d 1022, 1024 (Ind.Ct.App.1999), *reh'g denied, trans. denied.* As we construe the evidence in favor of the nonmovant, doubts about whether a genuine issue of material fact exists are resolved against the motion's proponent. *Webster,* 713 N.E.2d at 935. A genuine issue of material fact exists when facts concerning an issue that would dispose of the litigation are in dispute or when the undisputed facts are able to support conflicting inferences on such an issue. *Id.* at 936. A

grant of summary judgment may be affirmed on any theory supported by the designated materials. *Long,* 705 N.E.2d at 1024. In negligence cases, summary judgment is rarely appropriate. *Best Homes, Inc. v. Rainwater,* 714 N.E.2d 702, 706 (Ind.Ct.App.1999).

### DISCUSSION AND DECISION

In determining what, if any, duty is owed by a landowner as to trees and other natural conditions of his land, we are guided by *Valinet v. Eskew,* 574 N.E.2d 283, 285 (Ind.1991), in which our supreme court addressed a landowner's liability for injuries resulting from such natural conditions.

*Valinet* noted a "general rule of nonliability for natural conditions on land" and explained that the rule

> arose at a time when land was largely unsettled and the burden imposed on a landowner to inspect it for safety was held to exceed the societal benefit of preventing possible harm to passersby. Courts have imposed liability, however, when landowners had actual knowledge of a dangerous natural condition, regardless of location. Furthermore, a line of cases developed in which courts imposed a duty on landowners in more heavily populated areas to inspect their trees to try to prevent their posing an unreasonable risk of harm to passing motorists. The rationale for imposing such a duty on urban landowners is that the risk of harm to highway users is greater and the burden of inspection on landowners is lighter in such populated areas.

574 N.E.2d at 285 (citations omitted). With these considerations in view, the *Valinet* court agreed that "the differing duties placed on owners of land with respect to differing demographics is correct." *Id. Valinet* adopted § 363 of the Restatement (Second) of Torts which addresses harm caused by natural conditions of land and, making a distinction between "urban" land

**1.** We herewith deny the Christensens' petition    for oral argument.

and other kinds of land, imposes liability for harm only when that land is urban in nature.[2]

The Mileses base their argument upon the language of the above-noted Restatement section, contending that "[u]nder the plain language of § 363, the law does not impose any duty on the owners of rural land with regard to the care or removal of dead trees located adjacent to a public roadway." (Br. of Appellants at 10–11.) Observing that (1) their land is in a rural area and (2) the dead elm tree that fell onto the road and struck Jason was a natural condition of their land, the Mileses argue that they are not liable for Jason's death as they owed no duty to exercise reasonable care for the prevention of harm that a natural condition of their rural land might cause to one outside of their land.

■ This argument rests on a distinction between "urban" and "rural" land. For two reasons, however, we find that the determination of a landowner's duty does not hinge solely upon the "urban"/"rural" distinction. First, we find no language in *Valinet* indicating that a distinction between "urban" and "rural" may alone form a basis for determining whether a duty exists. Rather, *Valinet* calls for a more sophisticated analysis of the duty question, requiring a consideration of factors such as traffic patterns and land use in the relevant area. 574 N.E.2d at 285. Moreover, *Valinet* did not purport to set forth every factor that is pertinent to a determination of the landowner's duty. Although classifying land as either "urban" or "rural" may provide a useful starting point for determining a landowner's duty of care as to natural conditions, we cannot say that

*Valinet* intended the duty inquiry to consist solely of making such a classification.

■ Second, public policy considerations weigh in favor of recognizing that one who owns land, whether it be classified as "urban" or "rural," may owe a duty of reasonable care as to natural land conditions that threaten outsiders. In this regard, we observe that "[v]irtually every useable piece of property in the State of Indiana is adjacent to a roadway or highway." *Blake v. Dunn Farms, Inc.,* 274 Ind. 560, 567, 413 N.E.2d 560, 564 (1980). Moreover, motor vehicle travel is common and frequent in modern society. Consequently, a significant portion of the public is exposed to danger insofar as natural conditions of property may menace travelways and threaten the passage of motor vehicles. As such, sound public policy dictates that "in light of our increasingly mobile society, highways must be kept free from obstructions and hazards." *Fritz v. Parkison,* 397 N.W.2d 714, 715 (Iowa 1986). This public policy is effectuated by recognizing that any landowner may, under certain circumstances, owe a duty of reasonable care as to those who, while outside of the land, suffer harm from the land's natural conditions.

We cannot attempt to articulate every factor relevant to a determination of whether a landowner owes a duty of reasonable care to one outside the land. What factors are relevant will no doubt vary from situation to situation. However, whether there exists a duty of care as to natural conditions of one's land may not be resolved simply by classifying such land as either "urban" or "rural."

2. This provision of the Restatement reads as follows:

§ 363. Natural Conditions

(1) Except as stated in Subsection (2), neither a possessor of land, nor a vendor, lessor, or other transferor, is liable for physical harm caused to others outside of the land by a natural condition of the land.

(2) A possessor of land in an urban area is subject to liability to persons using a public highway for physical harm resulting from his failure to exercise reasonable care to prevent an unreasonable risk of harm arising from the condition of trees on the land near the highway.

Turning to the circumstances of the instant case, we conclude that a duty of reasonable care was owed. We acknowledge that the Mileses' property may be broadly classified as "rural." However, this property is not located in an area where regular public visitation would be unexpected. Rather, the Mileses' property was approximately one mile east of the City of Peru and abutted a state road suited for motor vehicle travel. In view of our discussion above, we think that the Mileses did owe a duty to care for or remove natural conditions such as a decaying or dead tree located on their land so as to protect those who might be traveling on the road. Whether a breach of this duty occurred presents a genuine issue of material fact. *See Bamberger & Feibleman v. Indianapolis Power & Light Co.*, 665 N.E.2d 933, 938 (Ind.Ct.App.1996) (indicating that whether the defendant breached a duty is generally a question to be determined by the trier of fact). Denial of the Mileses' motion for summary judgment was therefore appropriate.

## CONCLUSION

The Mileses owed a duty to care for or remove decaying or dead trees located on their land so as to protect people traveling on a public roadway. A genuine issue of material fact exists as to whether a breach of this duty occurred. Accordingly, the trial court did not err in denying the Mileses' motion for summary judgment.

Affirmed.

BAILEY, J., concurs.

BAKER, J., concurring in result with opinion.

**BAKER, J.**, concurring in result

I concur with the majority in affirming the denial of the Miles' motion for summary judgment. However, I would remand for a different reason. I do not believe that we may find a duty before we determine whether the land in question is urban or rural. I would remand rather to resolve whether there is a question of fact not addressed by the majority, and that is whether the land involved, adjacent to a public highway and one mile outside Peru's city limits, is urban or rural. The mere fact that land is outside of city limits does not suffice to make it rural. If the Miles' land is classified as urban, a different duty of care is imposed under § 363 of the Restatement (Second) of Torts,[3] and we need look no further than that classification.