**Dwight R. MAY, Appellant–Plaintiff,**

v.

**Jerry GEORGE, Appellee–Defendant.**

**No. 36A01–0902–CV–48.**

Court of Appeals of Indiana.

Aug. 10, 2009.

---

7. As already noted, the award did not provide for smoking cessation treatment.

Michael T. Scarton, Shean Law Offices, Bloomington, IN, Attorney for Appellant.

Richard T. Mullineaux, Eric D. Johnson, Crystal G. Rowe, Kightlinger & Gray, LLP, New Albany, IN, Attorneys for Appellee.

## OPINION

MAY, Judge.

Dwight R. May sued Jerry George for negligence after he was injured by a tree that fell from George's property. George filed a motion for summary judgment, which the trial court granted. We affirm.

## FACTS AND PROCEDURAL HISTORY

On May 25, 2006, May was driving on Peerless Road in Lawrence County. As he approached the intersection with McFadden Ridge Road, a tree fell from George's property and landed on May's truck. The tree crushed May's windshield and the front portion of the cab. May

suffered broken ribs. He filed a complaint, alleging George had been negligent by not removing the tree from his property.[1]

On July 10, 2008, George filed a motion for summary judgment. George argued that under *Valinet v. Eskew*, 574 N.E.2d 283 (Ind.1991), a rural landowner does not owe a duty to protect others outside the land from physical harm caused by a natural condition of the land. George designated evidence that the land was rural and he did not have actual knowledge the tree was in a dangerous condition. This evidence included the police report; George's deposition and affidavit; May's deposition; the deposition of Dan Lucas, the superintendent of the Lawrence County Highway Department; and the report of Joseph Rainwater, a certified arborist.

In his deposition, George stated he owns about 250 acres adjacent to Peerless and McFadden Ridge Roads. He has lived there about seventy-five years. He inherited 170 acres in 1970 and bought the rest from his sister in 1978. The land has been used to grow grain and hay and to raise livestock. About 120 acres of his property is wooded.

The area from where the tree fell was a "wooded bluff" that is not used for anything. (Appellee's App. at 35.) George would see the tree when he drove by, and he did not think it appeared to be rotten. The tree that fell was growing close together with two other trees. After the tree fell, it was apparent that the tree had been growing around a rock. When asked if he had ever had to stabilize, prop, or maintain any of the trees on his property, George said, "Not that I know of." (*Id.* at 32.)

In his affidavit, George stated the trees in that area had not been planted; they had grown up naturally. George stated he "was not aware of any potential hazard regarding the tree at issue in this lawsuit prior to the date of the accident at issue." (*Id.* at 40.) George asserted the land was rural, noting there are no commercial structures within .25 miles of the intersection and residences on Peerless Road are, on average, more than 200 feet apart.

In his deposition, May described Peerless Road as a "country road," (*id.* at 42), and he described the area of the accident as "rural." (*Id.* at 43.) The police report referred to Peerless Road as a "County Road." (*Id.* at 22.) It indicated the accident did not occur inside corporate limits, and listed the locality as "rural." (*Id.*)

Lucas stated Peerless and McFadden Ridge Roads are paved county roads. Lucas described the traffic pattern of those roads:

Q. How would you describe the traffic pattern on those roads?

\* \* \* \* \* \*

A. It's a rural road.

Q. Is it light traffic, medium traffic . . .

\* \* \* \* \* \*

A. Probably for that road, medium for a county road.

(*Id.* at 51.) The intersection of Peerless and McFadden Ridge Roads is not within the boundaries of any city or town.

Lucas was not aware of any prior complaints about this location:

Q. And, do you know if you have any record in your department of any-

---

1. May also sued the Lawrence County Board of Commissioners and the Lawrence County Highway Department but later stipulated to the dismissal of those defendants. Lawrence

County is responsible for maintaining Peerless and McFadden Ridge Roads; however, the tree was not within the County's right of way.

one making complaints about this tree or calling in that it needed to be removed before this accident?

A. No.

Q. Do you have any record of the property owner being approached before the accident to cut the tree down?

A. I have no knowledge of prior to my coming to work for the Lawrence County Highway. . . . We . . . talked to the . . . clerks that [were] there and they . . . told us that they had had no prior record of that.

(*Id.* at 58.)

Rainwater estimated the tree was sixty years old. It had been growing on a rock outcropping with two other trees. "The tree that failed was entirely on the stone and had one root reaching around the side of the stone and other trees to find soil." (*Id.* at 59.) Rainwater could not gauge the tree's health before it fell because it was damaged during its removal from the road.

In response, May designated, *inter alia*, the affidavit of his son, Austin May, and the affidavit of Edward Wright. Austin stated he had been driving behind his father at the time of the accident. He stated he was familiar with the intersection of Peerless and McFadden Ridge Roads, having passed that intersection about twice a day between 2005 and 2007. Austin asserted:

3. I noticed the dilapidated condition of the tree at the intersection as I drove by because it had hardly any leaves on the branches and I could see that it was growing on the rocks. The trunk of the tree was leaning towards the road and it had large branches, at least four inches in diameter, that were hanging completely across the roadway.

4. When driving on Peerless Road, I would frequently drive through the intersection more speedily because I was concerned that the tree could fall.

(Appellant's App. at 1–2.)

Wright stated he lives two or three miles from the intersection of Peerless and McFadden Ridge Roads and passes the intersection often. He stated:

5. I have observed the trees along the intersection of Peerless Road and McFadden Ridge Road. Many of the trees have been leaning across the road and over into the right-of-way of the road. Some of the trees had been in a weakened or decaying state.

6. Some of the trees that were weakened or unhealthy looking had been leaning halfway over the roads at the merging intersection of Peerless and McFadden Ridge Roads.

\* \* \* \* \* \*

8. I have had concerns for my safety and the safety of others while traveling along Peerless and McFadden Roads due to the noticeable deteriorating condition of the trees.

(*Id.* at 20.)

George moved to strike these affidavits, along with some photographs. The trial court granted that motion and also granted George's motion for summary judgment.

## DISCUSSION AND DECISION

When reviewing a summary judgment, we apply the same standard as the trial court: summary judgment is appropriate only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Corr v. Am. Family Ins.*, 767 N.E.2d 535, 537 (Ind.2002). We consider only the evidence

designated to the trial court.[2] *Marion County v. State*, 888 N.E.2d 292, 296 (Ind. Ct.App.2008). All facts and reasonable inferences drawn therefrom are construed in favor of the non-moving party, here May. *Corr*, 767 N.E.2d at 537–38. The appellant bears the burden of persuading us summary judgment was erroneous. *Cincinnati Ins. Co. v. Davis*, 860 N.E.2d 915, 922 (Ind.Ct.App.2007).

■ In order to establish a claim of negligence, May must show: (1) George owed May a duty, (2) George breached that duty, and (3) the breach proximately caused May's injuries. *See Denison Parking, Inc. v. Davis*, 861 N.E.2d 1276, 1279 (Ind.Ct.App.2007), *trans. denied.* Negligence cases are usually fact-sensitive; however, a defendant is entitled to judgment as a matter of law if the undisputed facts negate at least one element of the plaintiff's claim. *Id.* The existence of a duty is a question of law. *Id.*

■ George argues, pursuant to *Valinet*, he owed May no duty. Valinet owned wooded land in a residential area. An oak tree stood about twenty-eight feet from the edge of Spring Mill Road. Eskew was driving past during a storm, and the tree blew over onto her car.

In analyzing Valinet's duty, our Indiana Supreme Court adopted the Restatement (Second) of Torts § 363, titled "Natural Conditions." That section provides:

(1) Except as stated in Subsection (2), neither a possessor of land, nor a vendor, lessor, or other transferor, is liable for physical harm caused to others outside of the land by a natural condition of the land.

(2) A possessor of land in an urban area is subject to liability to persons using a public highway for physical harm resulting from his failure to exercise reasonable care to prevent an unreasonable risk of harm arising from the condition of trees on the land near the highway.

■ Our Indiana Supreme Court provided the following reasoning:

The general rule of nonliability for natural conditions on land arose at a time when land was largely unsettled and the burden imposed on a landowner to inspect it for safety was held to exceed the societal benefit of preventing possible harm to passersby. Courts have imposed liability, however, when landowners had actual knowledge of a dangerous natural condition, regardless of location. Furthermore, a line of cases developed in which courts imposed a duty on landowners in more heavily populated areas to inspect their trees to try to prevent their posing an unreasonable risk of harm to passing motorists. The rationale for imposing such a duty on urban landowners is that the risk of harm to highway users is greater and the burden of inspection on landowners is lighter in such populated areas.

We agree that the differing duties placed on owners of land with respect to differing demographics is correct. We, therefore, adopt § 363 of the RE-STATEMENT. Whether the land is in an area of sufficient population density to invoke the rule requires a factual consideration of such factors as land use and traffic patterns. Also, whether the landowner exercised the requisite reasonable care will require the fact finder

2. The Appellant's Appendix does not contain the chronological case summary or all the evidence designated to the trial court. *See* Ind. Appellate Rule 50(A)(2). Given our standard of review for summary judgment cases, our review would have been difficult had George not supplied an Appellee's Appendix that contains the items missing from the Appellant's Appendix.

to weigh the seriousness of the danger against the case with which it may be prevented. As this Court has previously held, a landowner need not continually inspect his property for natural dangers. However, under some circumstances, fulfilling a landowner's duty to passing motorists might reasonably require periodic inspections to be sure that the premises do not endanger those lawfully on the highway.

*Valinet*, 574 N.E.2d at 285–86 (citations omitted).

The designated evidence establishes that George's property is used primarily for agricultural purposes and is not within any city or town. The adjacent roads are county roads with "medium" traffic for that type of road.[3] (Appellee's App. at 51.) There are no businesses nearby and residences are, on average, more than 200 feet apart. George, May, Lucas, and the police officer who responded to the accident all described the area as rural. May notes Peerless Road is on a school bus route, but that fact is not inconsistent with the area being rural. May also argues Peerless Road is "a main route to State Road 37 and Bloomington, Indiana," (Appellant's Br. at 14), but he does not cite to any designated evidence.

May cites *Miles v. Christensen*, 724 N.E.2d 643, 646 (Ind.Ct.App.2000), *trans. denied*, for the proposition that "determination of a landowner's duty does not hinge solely upon the 'urban'/'rural' distinction." In *Miles*, we noted "*Valinet* calls for a more sophisticated analysis of the duty question, requiring a consideration of factors such as traffic patterns and land use in the relevant area. Moreover, *Valinet* did not purport to set forth every factor that is pertinent to a determination

of the landowner's duty." *Id.* (citation omitted). Although Miles' property could be broadly classified as rural, it was adjacent to a State Road near the City of Peru. Therefore, we held summary judgment was not appropriate. *Id.* at 647.

George designated evidence tending to demonstrate his land was rural, including evidence of the traffic patterns and land use in the area. Unlike *Miles*, where the urban/rural distinction was not clear cut, here, May did not designate any evidence tending to demonstrate the area was not rural.

▆▆▆ We turn next to whether the tree was a natural condition on George's land. A natural condition is "land that was not changed by any acts of humans" and includes "the natural growth of vegetation, such as weeds, on land that is not artificially made receptive to them." *Spears v. Blackwell*, 666 N.E.2d 974, 977 (Ind.Ct. App.1996), *reh'g denied, trans. denied.* George designated evidence that he had lived on the property for seventy-five years, the tree was approximately sixty years old, and no trees had been planted in that area of his property. May points to George's deposition testimony that at one time, a rock crusher had been placed on his property about forty to fifty feet from where the tree fell and that a well had been dug somewhere in the vicinity. May does not suggest what impact the rock crusher or the well had on the tree, and none is apparent from the designated evidence. Therefore, we conclude the tree was a natural condition.

▆▆▆ Finally, we turn to whether George knew or should have known the tree was in a dangerous condition. George designated evidence that he passed the tree

---

**3.** In his deposition, George was asked if Peerless Road was a busy road, and he said that it was. However, May did not ask what he meant by "busy," and the context suggests he may have been comparing it to McFadden Ridge Road.

regularly and did not think it appeared to be rotten. Although he knew the tree was growing in a rocky area, he could not see that the tree was growing directly over a piece of rock (rather than soil), until the tree fell. He was not aware of any previous problems with trees on his property, and Lucas was not aware of any reports to the Highway Department. Rainwater, a certified arborist retained by May, could not determine the condition of the tree before it fell. This is a further basis for distinguishing *Miles*. In *Miles*, it was undisputed the tree had been dead for several years.

In an attempt to create an issue of fact regarding George's knowledge, May designated some photographs and the affidavits of Austin and Wright. May argues this evidence was erroneously stricken by the trial court.

George moved to strike the photographs because they were unverified, citing *Wallace v. Indiana Ins. Co.*, 428 N.E.2d 1361, 1365 (Ind.Ct.App.1981). The trial court granted the motion, without stating a rationale. We need not decide whether the trial court erred, because the photographs do not help May. The photographs purport to show the tree after its fall and the area from which it fell. The photographs, therefore, do not contradict George's evidence that he could not tell the tree was growing on a rock or in poor condition prior to its fall.

George moved to strike the affidavits, arguing they were not timely produced in discovery. George served May with interrogatories, which requested, *inter alia*, the names and addresses of everyone who has relevant information. May's answer to this interrogatory listed only Rainwater. May did not supplement that answer, but did file a witness and exhibit list within the deadline set by the trial court. That list included Austin and Wright, although Wright's name was erroneously listed as "Ernie Wright" instead of "Edward Wright." (*See* Appellee's App. at 74.)

■ We conclude Wright's affidavit likewise does not help May. Wright asserted some of the trees near the intersection looked unhealthy, but he did not state his basis for this conclusion, nor is his assertion directed at the specific tree that fell.

■ As to Austin's affidavit, we cannot say the trial court erred by excluding it. It is apparent from Austin's affidavit that May should have been aware he had relevant knowledge from the date of the accident, May 25, 2006.[4] However, Austin was not included in the answers to interrogatories, which May served in May 2007. The record suggests, therefore, that this answer was inaccurate to begin with. At best, May failed to seasonably supplement the answer. Ind. Trial Rule 26(E)(1)(a). Austin apparently was not mentioned at all until May filed his witness list on August 18, 2008.

■ If a party fails to supplement discovery responses, the trial court can, in its discretion, exclude the evidence. *Dennerline v. Atterholt*, 886 N.E.2d 582, 592 (Ind.Ct.App.2008), *reh'g denied, trans. dismissed.* "Due to the fact-sensitive nature of discovery issues, a trial court's ruling is cloaked with a strong presumption of correctness." *Hlinko v. Marlow*, 864 N.E.2d 351, 353 (Ind.Ct.App.2007), *trans. denied.* The law provides no official "right" answer, and we will not reverse "unless we are persuaded that the judge's decision was clearly against the logic and effect of

4. George, on the other hand, was not present when the accident occurred, and did not learn until sometime later that the tree not only had fallen, but had fallen on a passing motorist.

the circumstances before the court." *Plohg v. NN Investors Life Ins. Co.*, 583 N.E.2d 1233, 1238 (Ind.Ct.App.1992), *trans. denied.* May failed to disclose a key witness of whom he must have been aware for over two years. That failure surely impacted the parties' litigation strategies. Therefore, we cannot say the trial court abused its discretion by striking Austin's affidavit.

May has not designated any evidence that George owed him a duty; therefore, we affirm.

Affirmed.

BAKER, C.J., and BARNES, J., concur.