**Ricky D. WHITAKER, Appellant,**

v.

**Travis M. BECKER and Roger R. Becker, Appellees.**

No. 02A03–1006–CT–303.

Court of Appeals of Indiana.

March 29, 2011.

Kevin L. Likes, Likes Law Office, LLC, Auburn, IN, Attorney for Appellant.

Jane E. Malloy, William A. Ramsey, Steele Ulmschneider & Malloy, LLP, Fort Wayne, IN, Attorneys for Appellees.

## OPINION

DARDEN, Judge.

### STATEMENT OF THE CASE

Rickey D. Whitaker appeals the trial court's order that granted the motion of Travis M. Becker for sanctions and dismissal of Whitaker's complaint for damages.

We affirm in part, reverse in part and remand with instructions.

### ISSUE

Whether the trial court abused its discretion when it denied Whitaker's motion to correct error challenging the courts order that dismissed Whitaker's complaint.

### FACTS

On December 19, 2008, Whitaker filed his complaint for damages, alleging that on December 21, 2006, Becker negligently operated his vehicle which resulted in it striking Whitaker's vehicle in the rear. On January 19, 2009, Becker filed his interrogatories and request for production pursuant to Indiana Trial Rules 33 and 37. On April 14, 2009, Becker's counsel wrote to Whitaker's counsel asking that the responses "due on February 23, 2009" be provided. (Whitaker's App. 71). On April 29, 2009, Becker's counsel again wrote to Whitaker's counsel—noting the previous reminder correspondence of April 14th and asking that Becker provide his "overdue" responses. *Id.* at 72. On May 12, 2009, Becker's counsel wrote a third letter to Whitaker's counsel, noting both previous letters to "remind[ ] . . . that the responses were overdue." *Id.* at 72. The third letter sought, as a "reasonable effort to reach agreement on this issue, in compliance with Trial Rule 26(F)," the necessary responses from Whitaker "within the next ten (10) days." *Id.* at 73.

Becker then filed a motion to compel on May 27, 2009. The motion included copies of the foregoing, asserted that discovery responses had still not been provided and that Whitaker's counsel had never responded to any of the correspondence in that regard. Becker sought an order compelling Whitaker to respond to the interrogatories and request for production within fifteen days. On June 1, 2009, the trial court issued its order "[c]ompelling" Whitaker to "respond to the Interrogatories and Request for Production of Documents issued by [Becker] on January 19, 2009, within fifteen (15) days." (Whitaker's App. 51). Thus, Whitaker's responses were due on or before June 16, 2009.

On June 15, 2009, Whitaker served his sworn discovery responses on Becker. Three days later, on June 18th, Whitaker had surgery—a fact not indicated in the discovery he provided. On June 18th, Becker's counsel received a letter dated June 17th stating that Becker was "scheduled to have surgery on June 18, 2009." *Id.* at 109. On November 30, 2009, Becker filed a request for sanctions—seeking the sanctions of dismissal, asserting that Whitaker "provided false and misleading answers to Interrogatories and deliberately concealed long-standing plans to have surgery," and payment of Becker's attorney fees. *Id.* at 52. With his request for sanctions, Becker submitted a memorandum of law and ten supporting exhibits. Whitaker did not file a response but did ask the court for a continuance of the scheduled hearing, which was granted.

On January 21, 2010, the trial court heard the parties' arguments and took the matter under advisement. On January 21, 2010, Becker's counsel filed an affidavit for attorney fees. On March 16, 2010, the trial court issued its nine-page order. The trial court found that Whitaker's June 15, 2009, discovery response reflect[ed] the following:

1. Interrogatory No. 45 asked Whitaker whether he had been assigned a disability rating. Whitaker answered: "not treated recently—waiting for money for surgery. **Can't take treatment any further with lack of insurance.**" (Plaintiff's interrogatories, attached as Exhibit D to Memorandum of Law in Support of Defendant's Request for Sanctions) (emphasis added [by trial court]).

2. Interrogatory No. 48 asked Whitaker whether he was presently being treated for any accident-related injuries. Whitaker answered: "**not treated recently**—waiting for money for surgery. **Can't take treatment any further with lack of insurance.**" (*Id.*) (emphasis added [by trial court]).

3. Interrogatory No. 49 asked Whitaker whether further medical treatment was anticipated. Whitaker answered, "**Not sure.** If it would resume it would be with Dr. McGee, **at this time not sure of what he would want to do.**" (*Id.*) (emphasis added [by trial court]).

4. Interrogatory No. 52 asked Whitaker to itemize his claimed medical expenses. Whitaker answered: "Enclosed Special Damages Brochure. **For medical bills to date.**" (*Id.*) (emphasis added [by trial court]). The "brochure" is attached to Becker's Memorandum as Exhibit E.

(Order 2). The trial court further found:

On *June 18, 2009*, three (3) days after Whitaker's responses were served, Becker's counsel received a letter from Whitaker's counsel notifying Becker that Whitaker "**is now scheduled to have surgery on June 18, 2009.**" (Becker's Memorandum, Exhibit F–1) (emphasis added [by trial court]). This letter was dated June 17, 2008, however it was not mailed until June 18, 2009—the same day as the surgery. (Becker's Memorandum, Exhibit F–3). Therefore, Becker did not receive the letter about Whitaker's surgery until after the surgery had taken place.

Becker later obtained records, via a non-party request, from Parkview North/Ortho Hospital, where Whitaker's surgery took place, which showed the following:

1. On *April 14, 2009*, Whitaker's orthopedic surgeon, Dr. McGee, had issued "Pre–Op Orders—Spinal Surgery," scheduling Whitaker's surgery for June 18, 2009. (Becker's Memorandum, Exhibit G) (emphasis added by trial court).

2. On *June 1, 2009*, Whitaker underwent pre-operative testing. (Becker's Memorandum, Exhibit H) (emphasis added by trial court).

3. On *June 12, 2009*, Whitaker had a pre-operative physical. (Becker's Memorandum, Exhibit H) (emphasis added by trial court).

Whitaker's June 15, 2009 interrogatory answers failed to mention either the June 1, 2009 pre-op orders or the June 12, 2009 pre-operative physical. In addition, Whitaker's "Special Damages Brochure" (provided as an exhibit to the June 15, 2009 discovery response) which purported to be "to date," omitted charges for the June 1 and 12, 2009 medical treatments/events. (Becker's Memorandum, Exhibit D, p. 26).

(Order 2–3).

The trial court noted the Trial Rules' requirement that a party should supplement answers to interrogatories when "he knows that the response was incorrect when made," or "knows that a failure to amend the response is in substance a knowing concealment." Ind. Tr. R. 26(D)(2)(a) and (b). It further noted that when a party's compliance with discovery has been compelled by court order, "an evasive or incomplete answer is to be treated as a failure to answer" and, thus, a failure to comply with the discovery order. T.R. 37(A)(3). The trial court also noted that dismissal was a permissible sanction when a party has failed to comply with a discovery order. *See* T.R. 37(B)(2)(c).

The order acknowledged Becker's argument that he was prejudiced by being unable to have Whitaker submit to an Independent Medical Examination (IME) prior to his surgery, and expressly noted that Whitaker had been diagnosed twenty-two months before the accident with multi-level degenerative disc disease. The trial court then found that after failing to respond to Becker's discovery requests, Whitaker "exercised bad faith by concealing the June 18, 2009 surgery through incomplete and deceptive interrogatory answers," and then only notifying Becker of his surgery by a letter "not sent until the day of the surgery." (Order 7). The trial court concluded that Whitaker's "concealment of his corrective surgery" had deprived Becker "forever" of "the opportunity to obtain medical evidence regarding the effect of Whitaker's injury and damages via an IME," and that the "loss of this evidence cannot justly be cured by a sanction less severe than dismissal of this case." *Id.* at 8. Accordingly, it ordered Whitaker's action dismissed and that Whitaker pay reasonable attorney fees in the amount of $3,770.00 to Becker's attorney.

On April, 15, 2010, Whitaker filed his motion to correct error, asserting that the trial court abused its discretion because its order of dismissal "founded on a determination that [Becker] was prejudiced by not having the opportunity to have an Independent Medical Examination (IME) prior to [Whitaker's] spinal surgery" was "against the logic and circumstances." Whitaker's App. 125. With his motion, Whitaker included evidence of the following:

▸ On October 14, 2008, Whitaker's counsel corresponded with the insurance claims representative for Becker, providing "medical expenses to date," and "what few records we have"; and advising of Whitaker's medical evaluation for "back and neck pain" following the accident, for which surgery costing $9,500.00 had been "recommended" by Dr. McGee, requiring prepayment thereof. *Id.* at 135. Counsel sought to "mov[e] the case to a conclusion in advance of the statute of limitation date." *Id.*

▶ On November 7, 2008, Whitaker's counsel corresponded with the insurance claims representative for Becker, noting that liability "should not be in question" inasmuch as Becker's automobile collided with the rear of Whitaker's and Becker was "sited [sic] for following too closely [sic] and that was determined to be the primary cause of the accident." *Id.* at 133. The letter enclosed "all medical bills we have to date," and medical records from Dr. McGee indicating that Whitaker "would need ... surgery" for his pain, the cost of which would be $9,500.00 as "mentioned in the medical record of December 6, 2007." *Id.* Counsel sought to "resolve the matter." *Id.* at 134.

▶ On December 18, 2008, counsel again corresponded with the insurance claims representative for Becker, noting that he had filed Whitaker's complaint because "[t]he statute of limitation is going to run," but that he "would not require that you obtain counsel to defend this action until such time as our negotiations become unfruitful." *Id.* at 136. The letter references the representative's "phone call of earlier this week," and advised that Whitaker "did not have the surgery that you referenced"—for which counsel had "provided ... the medical records indicating that they want to perform the surgery"—because Whitaker "ha[d] no health insurance or means to pay for that surgery." *Id.*

▶ On January 19, 2009. Becker's counsel had served on Whitaker's counsel a letter enclosing her third party request for production of documents to Dr. McGee, who had recommended surgery, and the response to which would have included evidence of his need for the surgery and efforts to schedule it. The letter of Becker's counsel noted Whitaker's agreement "to waive the 15-day notice requirement pertaining to these non-party requests." *Id.* at 137.

▶ The medical records of Dr. McGee which would have been provided in response to the foregoing: of May 21, 2007, indicating Whitaker's possible need for surgery; of November 12, 2007, indicating the need for and Whitaker's desire to proceed with surgery; and of December 6, 2007, indicating the $9,500.00 cost would require him to wait.

Whitaker's motion asserted that there "was no attempt to conceal a long standing plan to have surgery," in that his "need for surgery was clearly set out in previous correspondence" and "medical records obtained by" Becker. *Id.* at 127. He further asserted the lack of any *evidence, e.g.,* an "[a]ffidavit from a physician, ... case law, ... medical treatise[ ] or report[ ]," or otherwise was presented by Becker to establish that the inability to have a pre-surgery IME was prejudice so great that it could only be cured by dismissal. *Id.* at 126. Finally, he asserted that a "lesser sanction" than dismissal "would adequately protect the defendants in this case." *Id.*

On June 22, 2010, the trial court noted that pursuant to Indiana Trial Rule 53.3, Whitaker's motion to correct error was deemed denied.

## DECISION

 This case comes before us as an appeal from a denial of a motion to correct error. A trial court has discretion to grant or deny a motion to correct error, and we reverse its decision only for an abuse of that discretion. *Chapo v. Jefferson County Plan Comm'n,* 926 N.E.2d 504, 507 (Ind.Ct.App.2010) (citing *Hawkins v. Cannon,* 826 N.E.2d 658, 661 (Ind.Ct.App.

2005), *trans. denied* ). "An abuse of discretion occurs when the trial court's decision is against the facts and circumstances before the court or if the court has misinterpreted the law." *Id.*

We cannot find that in its analysis of the facts known prior to issuing its order of dismissal on March 16, 2010, the trial court misinterpreted the law with respect to its sanctioning authority. *See Peters v. Perry,* 877 N.E.2d 498, 499 (Ind.Ct.App.2007) (dismissal a possible sanction for discovery violation, and trial court not required to impose lesser sanctions before applying ultimate sanction of dismissal). Further, Whitaker bears some responsibility for his lack of proper diligence in the discovery process. We have considered "the facts and circumstances before the court" as a whole in our analysis. *Chapo,* 926 N.E.2d at 507.

First, we note that it appears, undisputed, that the underlying event was a rear end collision and that Becker was at fault. Hence, the litigation concerns only the amount of the damages that Whitaker may be entitled to receive.

Second, the evidence presented with the motion to correct error, establishes that in October of 2008, more than two months before filing suit, Whitaker, by written correspondence had notified a representative of Becker's insurance company of his need for surgery—which his doctor had recommended approximately one year earlier, *i.e.,* in the fall of 2007—and his inability to pay for it; and included medical records in this regard. A second notification, via written correspondence, in this regard was communicated one month before suit was filed, in November of 2008, and a third such communication took place at the time Whitaker filed suit in December of 2008. Moreover, Becker sent third party requests for Whitaker's medical records, whereby, Whitaker had agreed to waive the 15–day notice requirement on January 19, 2009, and the response thereto, again, would have evidenced Whitaker's need for surgery. Accordingly, for several months before the surgery took place on June 18, 2009, Becker had information concerning the fact that since the fall of 2007, Whitaker was in need of surgery for the pain that he alleged to have been suffering from the collision on December 21, 2006, and that his lack of money to pay for the surgery was an issue. Despite entreaties by Whitaker's counsel, no action was taken on Becker's behalf to resolve Whitaker's claims and/or to provide payment for the surgery. Moreover, when counsel for Becker appeared, in January, 2009, she still had ample opportunity to seek an IME. Yet, counsel did not seek or notify Whitaker of such intent; rather, she waited and used her assertion of an irremediable loss in this regard to seek the fatal dismissal of Whitaker's claim.

Third, as asserted by Whitaker to the trial court, Becker presented no evidence to the effect that an IME cannot be obtained. Trial Rule 35(A) provides as follows:

> When the mental or physical condition (including the blood group) of a party, . . . is in controversy, the court in which the action is pending may order the party to submit to a physical or mental examination by a suitably licensed or certified examiner or to produce for examination the person in his custody or legal control. . . . .

Clearly, the Rule itself does not speak to the timing of the IME. Moreover, we agree with Whitaker's citation of Evidence Rules 702 and 703 as allowing for medical experts to provide opinions on causation by conducting a records review. *Cf. Ford Motor Co. v. Ammerman,* 705 N.E.2d 539, 550 (Ind.Ct.App.1999), *trans. denied, cert. denied,* 529 U.S. 1021, 120 S.Ct. 1424, 146

L.Ed.2d 315 (2000); *Scott v. City of Seymour,* 659 N.E.2d 585, 592 (Ind.Ct.App. 1995).

Fourth, as asserted by Whitaker in his motion to correct error, Becker has presented no evidence that a post-surgery IME will have no value in assessing Whitaker's injury. This fact, combined with the foregoing note of the proper application of Evidence Rules 702 and 703, leads us to conclude that the trial court erred when it found that Becker was forever deprived of the opportunity to obtain an IME of Whitaker regarding his injury as a result of the collision.

We next note that with his June 15, 2009, response to interrogatories, Whitaker had provided an itemized list of medical expenses incurred *before* he filed his law suit, which allegedly exceeded $7,000.00, not including cost of surgery. Yet the effect of the trial court's dismissal is that Whitaker is entitled to no compensation whatsoever from Becker for any medical expenses arising from the collision, despite Becker's undisputed liability therefor. We further note that the trial court not only ordered the dismissal of Whitaker's action but *also* ordered him to pay $3,770.00 for Becker's attorney fees.

Finally, we note the general principle that the issuance of an order dismissing the action for a discovery violation "is a sanction of last resort, which should be used only in extreme circumstances to redress the most flagrant of discovery abuses." 23 Am.Jur.2d *Depositions and Discovery* § 220. We have stated that "in deciding whether a sanction is just, this court has routinely considered whether or not a trial court expressly warned a party that failure to comply could result in dismissal." *Prime Mortg. USA v. Nichols,* 885 N.E.2d 628, 649 (Ind.Ct.App.2008). There was no such warning or any such indication in this case. Thus, we cannot

conclude that Whitaker was "clearly aware that the trial court was considering" the "death knell" sanction of dismissal. *Id.* at 650. Further, given the information previously provided by Whitaker to representatives of Becker's insurance company about his need for surgery, the arguable misrepresentation in his initial interrogatory response is of far lesser gravity than the "lack of good-faith" shown by a party's production of a forged document in *Prime Mortg.*

Our ultimate conclusion is that our decision here should be viewed as akin to one in equity, and that our resolution of this appeal must turn on fairness and Indiana's "marked judicial deference for deciding disputes on their merits and for giving parties their day in court." *Id.* at 649 (citing *Charnas v. Estate of Loizos,* 822 N.E.2d 181, 185 (Ind.Ct.App.2005) and *Marfia v. T.C. Ziraat Bankasi, N.Y. Branch,* 100 F.3d 243, 249 (2d Cir.1996)); *see also Sears Roebuck and Co. v. Soja,* 932 N.E.2d 245, 249 (Ind.Ct.App.2010), *trans. denied.* We find that based upon the facts and circumstances before the trial court, the dismissal of Whitaker's action was an abuse of discretion. Therefore, we reverse the trial court's order of dismissal.

That said, we nevertheless find there are grounds that warrant the imposition of sanctions for the lack of proper diligence on the part of counsel for Whitaker. Collectively, we find that for counsel's failure to timely respond to letters of Becker's counsel regarding discovery matters, or to have requested an extension of time in which to respond to the request for production of discovery, rather than have counsel to seek production of discovery by court order, is unacceptable conduct by an officer of the court.

We reverse the trial court's order dismissing the case and the awarding of $3,700.00, as a reasonable amount for at-

torney's fees, herein. We affirm the trial court's order finding that there are grounds for sanction and the imposition of reasonable attorney's fees for unacceptable conduct by Whitaker. However, as noted above, we find that the conduct complained of, without any valid explanation by counsel in the record to the contrary, could have been avoided except for the failure of Whitaker's counsel. As a result, we find that counsel for Whitaker should be and hereby is sanctioned and ordered to pay to counsel for Becker the sum of $625.00 as reasonable attorney's fees in this matter.

THEREFORE, we affirm in part, reverse in part, and remand for further consideration consistent with our opinion.

NAJAM, J., and BAILEY, J., concur.