Donald BROWN, Plaintiff–Appellant,

v.

TERRE HAUTE REGIONAL HOSPITAL, Defendant–Appellee.

No. 61A04–8708–CV–258.

Court of Appeals of Indiana, Third District.

April 27, 1989.

Patrick J. Bennett, Bennett & Sheff, Indianapolis, for plaintiff-appellant.

John D. Nell, Andrew C. Charnstrom, Wooden McLaughlin & Sterner, Indianapolis, for defendant-appellee.

GARRARD, Presiding Judge.

Donald Brown appeals a jury verdict rendered in favor of Terre Haute Regional Hospital (hospital) in an action for damages which he allegedly sustained as a patient.

Brown was involved in a one-car accident in the early morning hours of April 16, 1981. He was admitted to the hospital shortly thereafter and could not move from the neck down.

After an initial examination in the emergency room, Brown was admitted into intensive care. He was diagnosed as having a possible cervical spine injury. X-rays taken later in the day revealed a displacement of the third cervical vertebrae (C–3) over the fourth cervical vertebrae (C–4). This caused Brown's spine to be out of normal alignment or subluxated. To treat the subluxation Brown was placed in cervical traction to which fifteen pounds of weight were applied.

As Brown's condition improved, his C–3 and C–4 vertebrae realigned and he began to regain movement and sensation in his extremities. Because of his improvement five of the fifteen pounds of traction were removed. An x-ray taken on April 23 showed his C–3 and C–4 vertebrae still aligned, and Brown continued to regain movement and sensation in his extremities.

On April 26 five more pounds of weight were removed from his traction. After the weight was removed Brown stated he complained to his nurses about a change in his condition. However, the nurses disagreed and testified that Brown did not complain nor did they observe a change.

An x-ray taken on April 27 revealed an anterior displacement of Brown's C–3 and C–4 vertebrae. This meant that his vertebrae were again out of alignment. Five pounds of weight were immediately added to Brown's traction.

On April 28 Brown's doctor noticed that his spinal column was unstable and requested a neurosurgeon to evaluate Brown's condition. It was determined that Brown's spine had again subluxated. Subsequently, the neurosurgeon performed fusion surgery on May 1 to remedy the recurrent subluxation.

After the surgery Brown developed other problems associated with his original injuries. He was not released from Terre Haute Regional Hospital until September 3, 1981. He was then transferred to Community Hospital in Indianapolis where he underwent additional surgeries and treatment. He was also treated at Methodist Hospital. Brown now lives at Autumn Care Nursing Home and continues to improve.

At trial Brown argued that the hospital's negligence caused the recurrent subluxation following his car accident. However, the jury disagreed and rendered a verdict for the hospital. Brown appeals and raises five issues for our review:

1. Whether the trial court erred when it excluded Dr. Worth's testimony concerning the effect of a delay in reporting a change in plaintiff's condition on plaintiff's overall recovery.

2. Whether the trial court erred when it allowed the hospital to introduce evidence in violation of the motion in limine granted by the trial court.

3. Whether the trial court erred when it withdrew from the jury certain contentions in Brown's preliminary jury instructions.

4. Whether the trial court erred when it overruled Brown's motion to amend the pleadings to conform to the evidence.

5. Whether the trial court erred when it tendered the jury instructions.

## Issue One

Brown argues that the trial court erred when it excluded Dr. Worth's opinion testimony concerning the effect of a delay in reporting a change in his condition to his overall recovery. Dr. Worth's testimony was excluded by the trial court as a sanction pursuant to Indiana Rules of Procedure, Trial Rule 37(B)(2)(b) [1].

To understand the reasons for the 37(B)(2)(b) sanction the discovery in this case must be put into perspective. At the inception of this action the hospital sent interrogatories to Brown requesting information regarding his expert witnesses and Brown responded that he had not retained such persons. Since that time Brown has not formally supplemented his answers pursuant to Trial Rule 26(E)(1).[2] Brown eventually verbally informed the hospital of five expert witnesses, one of whom was Dr. Worth.

A year later, and thirteen days before trial, Brown filed a witness list identifying a new expert witness who was deposed by the hospital four days before trial. The day after this deposition Brown identified yet another expert witness. Because of the late addition of these two experts, the hospital filed a motion to exclude their opinion testimony. In the alternative, the hospital asked for a continuance of trial. The hospital also requested that Brown disclose whether any other previously deposed expert witness had developed additional opinions of which the hospital had not been advised, referring again to TR 26(E)(1).

After first reserving its ruling, the court denied the hospital's motion to exclude testimony but granted a one week continuance of trial. The court's order states in part:

Court now denies Defendant's Motion to exclude opinion testimony from said doctors and vocational expert and in alternative Court continues the trial of said cause until Monday the 20th day of April, 1987. Counsel directed to advise opposing counsel of any expert witnesses on said witness list who are now going to give opinion testimony or any witness who formerly had no opinion who now are going to give opinion testimony. Counsel ordered to depose all expert witnesses that they desire to and complete depositions prior to April 20, 1987.

During the continuance period the hospital deposed the newly identified expert witnesses and redeposed Dr. Worth because Brown had notified the hospital that Dr. Worth may have new opinions concerning Brown's phrenic nerve.

At the second deposition, Dr. Worth did have new opinion testimony. He testified that in his opinion Brown had sustained a residual injury as the result of the care received at the hospital. He further testified as to the reduced chance of recovery due to the recurrent subluxation. He did not, however, voice any opinion concerning the effect or existence of delay between the occurrence and treatment of any change in Brown's condition. At the end of his deposition Dr. Worth affirmed twice that he had disclosed all of his opinions.

After the second deposition of Dr. Worth the hospital filed another motion to exclude

---

1. Trial Rule 37(B)(2)(b) provides:

(2) *Sanctions by Court in Which Action Is Pending.* If a party or an officer, director, or managing agent of a party or an organization, including a governmental organization, or a person designated under Rule 30(B)(6) or 31(A) to testify on behalf of a party or an organization, including a governmental organization, fails to obey an order to provide or permit discovery, including an order made under subdivision (A) of this rule or Rule 35, the court in which the action is pending may make such orders in regard to the failure as are just, and among others the following:

\* \* \* \* \* \*

(b) An order refusing to allow the disobedient party to support or oppose designated claims or defenses, or prohibiting him from introducing designated matters in evidence.

2. Trial Rule 26(E)(1) states:

(1) A party is under a duty seasonably to supplement his response with respect to any question directly addressed to:

(a) the identity and location of persons having knowledge of discoverable matter; and

(b) the identity of each person expected to be called as an expert witness at trial, the subject-matter on which he is expected to testify and the substance of his testimony.

opinion testimony. The hospital argued that Worth's opinion concerning the reduced chance of recovery presented "significant new factual and legal issues." However, the trial court overruled the hospital's motion.

The trial began on April 20, 1987. At trial Dr. Worth testified that in his opinion the recurrent subluxation reduced Brown's chances of functional recovery. Then Brown attempted to elicit from Dr. Worth his opinion as to the effect the passage of time would have on a patient's prognosis after he complains about a change in his condition. The hospital objected to this line of questioning and moved to exclude this testimony. The court sustained the motion and Brown argues this was in error.[3]

The sanctions available to the trial court when a party fails to comply with a discretionary order are within its sound discretion. *Chuck Callahan Ford v. Watson* (1982), Ind.App., 443 N.E.2d 79. In reviewing discretionary orders, we will affirm if there is any rational basis for the trial court's actions. *Drexel Burnham Lambert, Inc. v. Merchants Investment Counseling, Inc.* (1983), Ind.App., 451 N.E.2d 346.

■ Brown acknowledges that the court has discretion to impose sanctions for failure to comply with discovery orders. However, he argues he did not disobey the trial court's discovery order. Brown explains that discovery in this case was conducted rather informally and although Brown did not supplement his answers to interrogatories pursuant to 26(E)(1) he did verbally inform the hospital about his experts. He also claims that he came forward with information concerning Dr. Worth's opinion which led to Worth's second deposition. Brown contends this shows he was trying to provide discovery.

Although Brown did not formally supplement his answers to interrogatories pursuant to 26(E)(1) he did verbally inform the hospital of his witnesses. If this was Brown's only error his argument might have some merit. However, it was not. After announcing two expert witnesses only days before trial, the trial court allowed a continuance of trial to depose these witnesses and specifically ordered the parties to inform opposing counsel of any experts who had no opinion before but now are going to give opinion testimony. The purpose of the order was clearly to allow the deposing of these witnesses to discover their new opinion testimony. The opinion testimony of an expert is discoverable pursuant to Indiana Rules of Procedure, Trial Rule 26(B)(4).

At his second deposition, Dr. Worth did have new opinions but did not mention the opinion which was ultimately disallowed by the trial court.

■ Brown contends that even if he failed to comply with the court order, it is at most a technical failure to comply, and the testimony should not be excluded because the gravity of such a sanction under the circumstances is too harsh. He urges that because of the informal nature of discovery in this case and because there has been no showing of bad faith, this court should go beyond the trial rules and apply principles of equity. It is true that if parties voluntarily adopt informal methods of discovery, the trial rules should not be read to discourage such methods. *Evans v. Huss* (1981), Ind.App., 415 N.E.2d 783. However, the court was within its province in determining Brown had abused discovery despite the informality accepted by the parties. The sanction imposed was not too harsh under the circumstances.

Throughout discovery Brown was not cooperative. Because of his late addition of expert witnesses a continuance had to be granted. Dr. Worth was deposed for a second time at this juncture for the express purpose of describing his changed or additional expert opinion testimony. Brown

**3.** The court explained to Brown:

When the rule puts the burden on you to develop any other opinions that you're going to ask in trial, Mr. Hanner, as I understand the rule you're obligated to bring that up to opposing counsel and we've all kind of flown by the seat of our pants in this thing clear up and I just say someplace I've got to draw a line.

was given ample opportunity to inform the hospital of Dr. Worth's expert opinion testimony. The trial court did not abuse its discretion when it "drew the line" and refused to allow Dr. Worth to testify to additional undisclosed opinions.

### Issue Two

Brown next argues that the trial court erred when it permitted the hospital in opening statement and in the introduction of evidence to violate Brown's motion in limine which the court had granted.

The motion in limine sought to prevent the defendants from mentioning without the court's permission three subjects, one of which, according to the motion, was "that the plaintiff was 'intoxicated' or 'drunk' when admitted to Terre Haute Regional Hospital." The court sustained the motion "as to evidence of intoxication prior or at the time of said accident," but no detailed order in limine was entered.[4]

The asserted violation concerns two exhibits which were a part of Brown's hospital records. One was a neurological evaluation performed by Dr. Ilagan. It contained, in a paragraph entitled "Brief History," the statement that reportedly the patient had been drinking. The other exhibit was a report of physical examination performed by Dr. Gillespie. Within its "History of Present Illness" paragraph mention was made that Brown had alcohol on his breath when he was admitted to the hospital.

Enlargements of these exhibits, as well as other records kept by the hospital, were shown to the jury during opening statement. Subsequently, the exhibits were introduced in evidence. The objection made during the opening and when the exhibits were offered was simply that they were in violation of the (order) in limine. From the colloquy with counsel, which occurred when the objection was first made, it is apparent that the court interpreted its order to preclude only references to Brown being drunk or intoxicated.

We commence our consideration with some observations about prosecuting error where a motion in limine is involved.

It is by now well established that the ruling on such a motion is not final on the admissibility of evidence. Instead, it is designed to prevent mention of prejudicial material to the jury before the court has had opportunity to consider its admissibility. *Greene v. State* (1987), Ind., 515 N.E. 2d 1376; *Hatcher v. State* (1987), Ind.App., 510 N.E.2d 184.

■ One consequence of this is that the ruling granting or denying the motion is not available as a ground for reversal.

■ The second consequence is that error based upon the subsequent admission of evidence must be predicated upon timely and proper objection when the evidence is offered at trial. That is not to say that a party who violates an order in limine may do so with impunity. The sanction is within the discretion of the trial court and under appropriate circumstances might extend to declaration of a mistrial and/or punishment for contempt. To assert error in the admission of the evidence, however, requires a proper contemporaneous objection whether or not the court granted an order in limine.

■ In the present case the objection made when the first exhibit was offered was, "I believe it violates our Motion in Limine that was sustained by the court." The objection to the second exhibit was, "We're going to object to this document unless its excised and [sic] to conform with the Motion in Limine." The objection during opening was, also, that the exhibits violated the motion in limine which had been granted.

From the record it appears that the trial court did not consider that the evidence that alcohol had been consumed violated the order precluding evidence of intoxication or drunkenness. Because of the imprecise nature of the order we cannot say the court abused its discretion in so ruling.

---

4. We continue to recommend specific orders as a means of obviating arguments over what a party has or has not been ordered to refrain from doing.

■ Neither do we find an abuse of discretion when we accept the objection made as constituting an objection to the evidence on the *grounds* advanced in the motion in limine. The only ground asserted in the motion is that the evidence was irrelevant or, if marginally relevant, it's undue prejudice greatly outweighed its relevance. Such a determination is committed to the court's discretion and, again, an abuse of discretion must be shown to establish reversible error. *See, e.g., Smith v. Crouse–Hinds* (1978), 175 Ind.App. 679, 373 N.E.2d 923.

■ We are unable to find reversible error in the admission of the exhibits, and hence their display during opening statement was not reversible error. The exhibits themselves were part of the hospital admission records and an issue appears to have involved the record making and record keeping practices of the hospital. Beyond their bare admission and display to the jury, there is no assertion that alcohol consumption or intoxication was ever mentioned to the jury. While the statements might have been excludible on other grounds, no other objection was made. In fact, when the entire medical record, of which the exhibits were a part, was separately offered, no objection was made to its admission. We find no reversible error.

### Issue Three

After Brown rested the court granted the hospital's TR 50 motion for judgment on the evidence concerning four of Brown's contentions. He claims this was error. We disagree.

The first issue withdrawn concerned a claim that the treating physicians did not take adequate x-rays. No argument has been presented on that issue and it has therefore been waived.

■ The next two issues concerned whether the hospital provided adequate staff training in proper patient transfer techniques and whether it maintained proper sanitary techniques. There was a total failure of proof that such deficiencies, if they existed, contributed to the injuries and damages claimed by Brown. Therefore those contentions were properly removed from the jury's consideration. *Stanley v. Fisher* (1981), Ind.App., 417 N.E.2d 932.

■ The fourth removed contention was that Brown's injuries were permanent. There was no medical evidence that they were, but more significantly, Brown can claim no harm from the ruling. Since the jury found against him on the issue of liability, any error concerning merely the extent of his injuries or damages is necessarily harmless. *Adkins v. Poparad* (1943), 222 Ind. 16, 51 N.E.2d 476.

### Issue Four

■ At the close of plaintiff's case Brown made a general motion that the pleadings be amended to conform to the evidence. The motion was denied and Brown asserts this was error. Although no specific amendment was sought by the motion, Brown argues that it was designed to present an issue concerning the use of a Philadelphia collar prescribed by Dr. Cacdac after he performed the spinal fusion.

We find no reversible error. Mention of the collar was first made in a medical record exhibit reflecting post operation orders. Dr. Feuer was then examined concerning use of the collar. Although appropriate objections to this testimony were made the court admitted it.

■ Brown raises no argument that he was prevented from placing any evidence before the jury. Nor is there any assertion that he was denied an instruction or restricted in his final argument. In short, any error in the ruling was harmless because the evidence was all submitted to the jury.[5]

### Issue Five

Brown finally contends the court erred in giving three of defendant's tendered final

---

5. We therefore need not reach the issue of whether the ruling was error. We note, however, that in making such motions counsel should state with particularity the amendments sought. Failure to do so might, under appropriate circumstances, constitute a waiver.

instructions and in refusing to give three of Brown's.

Where, as here, the instructions at issue are not mandatory, they are to be viewed as a whole in determining whether the jury was fairly instructed. If the content of a refused instruction was adequately covered by other instructions which were given, or if a defect or deficiency in a particular instruction is eliminated when it is viewed in context with the other instructions, there is no reversible error. *Smith v. Ins. Co. of N.A.* (1980), Ind.App., 411 N.E.2d 638.

Brown complains of defendant's instruction No. 1 concerning plaintiff's burden of proof. He contends the instruction might have misled the jury into believing that in order to recover he had to prove all his various claims of negligence. Similarly, he complains of the court's refusal to give his tendered instructions numbered 1 and 3, each of which would have told the jury it was sufficient to prove any single act of negligence which proximately caused his injuries. He also complains of the refusal to give his tendered instruction No. 5 which would have told the jury they might draw reasonable inferences from the facts proved.

He neglects to mention, however, that the court did give his tendered instruction No. 4 which adequately covered all those questions and removed any potential confusion of the jury.

■ Defendant's instruction No. 5 addressed the jury's consideration of expert opinion testimony. Brown complains that portions of the instruction did not adequately explain the propriety of an expert relying on certain kinds of hearsay evidence or the role of possibility in expert medical opinion. He does not demonstrate how he was harmed by those alleged defects.

We believe the instruction was correct as far as it went. If Brown felt it should be amplified or required additional definitions he should have tendered instructions supplying the additional information. The failure to do so constitutes a waiver of the issue. *Thornton v. Pender* (1978), 268 Ind.

540, 377 N.E.2d 613, 622; *Berger v. Peterson* (1986), Ind.App., 498 N.E.2d 1257.

■ Finally, Brown complains of an instruction which told the jury that before Brown could recover for any claimed injury there must be expert medical testimony that the injury resulted from the hospital's negligent conduct.

We believe the instruction correctly stated the law as it applied to the issues and facts in evidence. Brown was admitted to the hospital with substantial injuries from the crash. Whether the injuries he sought recovery for were attributable to his original injuries or resulted from the alleged acts of malpractice were questions of science necessarily dependent on the testimony of physicians and surgeons learned in such matters. They were not of the kind a jury of lay persons might reasonably deduce without the necessity of expert opinion. *See Davis v. Schneider* (1979), 182 Ind.App. 275, 395 N.E.2d 283; *Bassett v. Glock* (1977), 174 Ind.App. 439, 368 N.E.2d 18.[6]

It was not error to give the instruction.

Affirmed.

HOFFMAN and MILLER, JJ., concur.

---

**6.** Brown's argument that medical testimony was not necessary to establish a hospital's act as negligent is misplaced. The instruction addressed proof of causation, not negligence.