# FOR PUBLICATION

ATTORNEY FOR APPELLANTS:

**JAMES E. AYERS**
Wernle, Ristine & Ayers
Crawfordsville, Indiana

ATTORNEYS FOR APPELLEES:

**PETER H. POGUE**
**JULIE ABBOTT CONDICT**
Schultz & Pogue, LLP
Indianapolis, Indiana

FILED

Apr 05 2012, 8:54 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

SHARON WRIGHT and                )
LESLIE WRIGHT,                   )
                                 )
   Appellants-Plaintiffs,        )
                                 )
      vs.                    )     No. 54A01-1107-CT-302
                                 )
ANTHONY E. MILLER, D.P.M. and    )
ACHILLES PODIATRY GROUP,         )
                                 )
   Appellees-Defendants.         )
                                 )

APPEAL FROM THE MONTGOMERY SUPERIOR COURT
The Honorable David A. Ault, Judge
Cause No. 54D01-0903-CT-106

April 5, 2012

**OPINION - FOR PUBLICATION**

**VAIDIK, Judge**

**Case Summary**

Sharon Wright brought a medical malpractice claim against Dr. Anthony Miller and Achilles Podiatry Group for an allegedly negligently performed bunion surgery. The trial court both struck Wright's expert witness and dismissed her claims under Indiana Trial Rule 37(B) for failure to comply with discovery orders and Indiana Trial Rule 41(E) for failure to prosecute and failure to follow court orders. Specifically, the trial court noted that Wright did not identify her expert witness on time and would therefore be without the expert testimony at trial necessary to bring her medical malpractice claim. Wright appeals, contending the trial court abused its discretion in both striking her expert witness and dismissing her claims. She also contends that her claim for medical battery due to lack of informed consent can go forward even without expert testimony.

We give great deference to our trial court colleagues in ruling on discovery issues. We recognize that trial courts have an obligation to run the court's calendar in an efficient and timely manner. But, we must weigh that obligation against an individual litigant's right to have her day in court. Here, Wright's failure to timely comply with deadlines caused short delays before the trial, but, ultimately, the trial was delayed for reasons outside her control, namely, her expert witness was unavailable for medical reasons. Further, there was no order compelling discovery, no warning that dismissal was looming, or any deception on the part of Wright. As such, her misconduct did not rise to a sufficient level to deny her the chance to resolve her case in court. We therefore hold that the trial court abused its discretion in dismissing the claim and striking Wright's expert witness under both Trial Rule 37(B) and 41(E). As a result, we do not need to

2

reach the issue of whether Wright may proceed forward with her medical battery claim without an expert. We reverse and remand for further proceedings.

**Facts and Procedural History**

Sharon Wright went to podiatrist Dr. Anthony Miller, D.P.M., at Crawfordsville Foot & Ankle Center on April 14, 2004, and was diagnosed with bunions and hammertoes on both feet and a plantar flexed metatarsal. Wright indicated that the pain in her left foot was more severe than the pain in her right foot and that it was difficult for her to walk and wear shoes.

On April 29, 2004, Dr. Miller performed surgery on Wright's left foot after obtaining the appropriate informed consent. The surgery was successful, but Wright was still experiencing pain in her right foot. She returned to Dr. Miller on May 19, 2004, at which time they discussed possible surgical intervention for her right foot. After discussing the possible procedures and risks, Wright claims she only consented to surgery to correct her bunion. Appellant's Br. p. 13. Dr. Miller, however, claims that Wright consented to "reduction of hammertoes 2, 4, 5, raise dropped metatarsals 2, 3, reduction of Tailor's bunion, lengthening of extensor tendons 2-5 and increase range of motion 1st metatarsal phalangeal joint with use of implant, right foot." Appellee's App. p. 17-18.

On June 3, 2004, Dr. Miller performed surgery on Wright's right foot. The procedures included: total joint replacement with implant #1 Swanson, right; Tailor's bunionectomy, right; arthroplasty, second digit, right; arthroplasty, third digit, right; arthroplasty, fourth digit, right; arthroplasty, fifth digit, right; arthroplasty, second MPJ, right; tenotomy, third, right; tenotomy, fourth, right. *Id.* at 18. The surgery was

3

completed without complication. However, after surgery, Wright complained of misalignment and twisting of her toes with distortion, an increase in pain, and difficulty walking. Appellant's App. p. 12, 227.

Wright[1] filed a malpractice claim with the Indiana Department of Insurance on either April 15 or April 18, 2006. The date is in dispute but is not material to the issues before us. The members of the Department of Insurance panel issued a unanimous opinion in favor of Dr. Miller on December 19, 2008. Wright filed her complaint against Dr. Miller and Achilles Podiatry Group (hereinafter collectively referred to as "Dr. Miller") with the Montgomery Superior Court on March 17, 2009. Dr. Miller filed a motion for summary judgment, and Wright's response included an affidavit of Dr. Franklin Nash establishing that Dr. Miller did not meet the standard of care. Dr. Miller later withdrew his Motion for Summary Judgment.

In July 2009, Wright responded to Dr. Miller's interrogatories, indicating that she had no other expert witness besides Dr. Nash. At a pretrial conference on August 17, 2009, the trial court set the trial date as August 24, 2010, with preliminary lists to be filed by Friday, September 18, 2009, Wright's expert to be named by April 16, 2010, Dr. Miller's experts to be named by June 18, 2010, final witness and exhibit lists and statements of contentions to be filed by July 16, 2010, discovery to be completed by July 23, 2010, and proposed jury instructions due July 30, 2010. *Id.* at 104-105. Dr. Miller met all of these deadlines. Wright filed her preliminary list three days late, her final list, which was a re-filing of her preliminary list, eleven days late, her statement of

---

[1] We acknowledge that Wright's husband has been added as a plaintiff but nevertheless continue to refer to the plaintiffs in the singular as "Wright."

contentions twenty-four days late, and her final jury instructions ten days late. Notably, Wright never included Dr. Nash on her witness list and never identified him as her expert witness, even though he had already provided an affidavit for this case – an affidavit that was provided to Dr. Miller – and both parties knew all along that he was going to be Wright's expert.

During discovery, on July 22, 2010, Wright filed a protective order against Dr. Miller's second set of interrogatories, claiming that they were improper and exceeded the scope of discovery. On July 23, 2010, Wright filed another protective order against Dr. Miller's second request for production, claiming that the documents requested were not in her possession. A review of the record does not show that the trial court ever ruled on either protective order.

Also on July 23, 2010, Wright filed for a continuance of the trial date, citing her continuing medical treatment and the inability to supplement discovery responses before the August 24, 2010, trial date. Dr. Miller objected to the continuance.

Wright asked for a second continuance to find a new expert witness on August 4, 2010. Dr. Nash had been hospitalized for mental health issues and his psychologist, Dr. Ari Gleckman, feared that although Dr. Nash could provide expert testimony and professional consultant services, "the price that he would pay in terms of his psychiatric and physical functioning could be lethal." *Id.* at 306. Again, Dr. Miller objected to the continuance. On August 16, 2010, the trial court granted the continuances, setting a new discovery deadline of December 24, 2010, and a status conference for January 10, 2011, at which time a new trial date would be chosen.

5

Upon receiving the news that Dr. Nash was unavailable, Wright attempted to secure her treating physician, Dr. Mihir Patel, as an expert witness and obtain his deposition. These attempts were unsuccessful, so Wright's counsel contacted a referral service in November 2010 to find another expert witness. Appellant's Br. p. 30. Dr. Jerome Bagner was identified as a potential qualified expert witness on December 17, 2010, and Wright's counsel submitted the evidentiary material to him for review. Dr. Bagner did not confirm his willingness to testify until January 9, 2011. *Id.*

Dr. Miller filed a motion to dismiss the case on January 7, 2011, due to Wright's alleged lack of evidence and failure to comply with the discovery deadlines. Appellant's App. p. 310. Wright filed her notice of an expert witness on January 10, 2011, seventeen days after the discovery deadline, and Dr. Miller moved to strike the notice as untimely. The trial court granted both Dr. Miller's motion to dismiss and motion to strike Wright's expert witness on the grounds of Trial Rule 37(B) for discovery violations and Trial Rule 41(E) for failure to prosecute and follow court orders. The trial court also noted that Wright's medical malpractice case could not go forward for lack of evidence, as she now lacked an expert witness. In making its decision, the trial court made reference to Wright's disrespect for the court, including missed discovery deadlines and requests for extensions of time and continuances. *Id.* at 350-61.

Wright now appeals.

**Discussion and Decision**

Wright makes multiple arguments on appeal, which we consolidate and restate as: (1) whether the trial court abused its discretion in dismissing her claim and striking her

expert under Trial Rule 41(E); (2) whether the trial court abused its discretion in dismissing her claim and striking her expert under Trial Rule 37(B); and (3) whether expert testimony is necessary for a medical battery claim based on lack of informed consent. Because we resolve the case as we do, we find the first two arguments to be dispositive and therefore do not reach Wright's third argument.

The rules of discovery are designed to "allow a liberal discovery process, the purposes of which are to provide parties with information essential to litigation of the issues, to eliminate surprise, and to promote settlement." *Hatfield v. Edward J. DeBartolo Corp.*, 676 N.E.2d 395, 399 (Ind. Ct. App. 1997), *reh'g denied*, *trans. denied*. Our review of discovery matters is limited to determining whether the trial court abused its discretion. *Bridgestone Ams. Holding, Inc. v. Mayberry*, 878 N.E.2d 189, 191 (Ind. 2007). An abuse of discretion may occur if the trial court's decision is clearly against the logic and effect of the facts and circumstances before the court or if the trial court has misinterpreted the law. *Id.*

## I. Trial Rule 41(E)

Wright contends that the trial court abused its discretion in dismissing her case and striking her expert under Trial Rule 41(E) for failure to prosecute and follow court orders. We will reverse a Trial Rule 41(E) dismissal only in the event of a clear abuse of discretion, which occurs if the decision of the trial court is against the logic and effect of the facts and circumstances before it. *Metcalf v. Estate of Hastings*, 726 N.E.2d 372, 373-74 (Ind. Ct. App. 2000), *trans. denied*. We will affirm if there is any evidence that supports the decision of the trial court. *Id.* at 374.

Trial Rule 41(E) says:

> Whenever there has been a failure to comply with these rules or when no action has been taken in a civil case for a period of sixty [60] days, the court, on motion of a party or on its own motion *shall order a hearing for the purpose of dismissing such case*. The court shall enter an order of dismissal at plaintiff's costs if the plaintiff shall not show sufficient cause at or before such hearing. Dismissal may be withheld or reinstatement of dismissal may be made subject to the condition that the plaintiff comply with these rules and diligently prosecute the action and upon such terms that the court in its discretion determines to be necessary to assure such diligent prosecution.

(emphasis added). Explicitly stated in the rule is the requirement of a hearing before a case is dismissed. The trial court did not conduct such a hearing, so any dismissal under Trial Rule 41(E) for failure to prosecute or failure to follow court orders was premature and an abuse of the trial court's discretion.

However, Dr. Miller argues that Wright has waived this argument because she did not address it in her Appellant's Brief, only in her Reply Brief. *Wright v. Miller, et al.*, No. 54D01-0904-CT-106 (Ind. Ct. App. Dec. 16, 2011). While the newly-raised argument is technically waived, Ind. Appellate Rule 46(C), we hold that we nonetheless must follow the explicit language of the Trial Rules so as not to create inconsistent results. *See* Ind. Tr. Rule 1 ("these rules govern the procedure and practice in *all* courts of the state of Indiana in *all suits of a civil nature . . . .*") (emphases added). Following the rule as written leads us to find that the trial court clearly abused its discretion and that the case was improperly dismissed under Trial Rule 41(E).

## II. Trial Rule 37(B)

Wright also contends that the trial court abused its discretion in both dismissing her claim and striking her expert witness under Trial Rule 37(B). Discovery is designed

8

to be self-executing with little, if any, supervision or assistance by the trial court. *Mallard's Pointe Condominium Ass'n, Inc. v. L&L Investors Group, LLC*, 859 N.E.2d 360, 364 (Ind. Ct. App. 2006), *reh'g denied*, *trans. denied*. However, when the goals of this system break down, Trial Rule 37 provides the court with tools to enforce compliance. *Pfaffenberger v. Jackson Cnty. Reg'l Sewer Dist.*, 785 N.E.2d 1180, 1183 (Ind. Ct. App. 2003). Trial Rule 37(B)(2) provides in relevant part:

> If a party . . . fails to obey an order to provide or permit discovery, . . . the court in which the action is pending may make such orders in regard to the failure as are just, and among others the following:

> \* \* \* \* \*

> (c) An order striking out pleadings or parts thereof, or staying further proceedings until the order is obeyed, or dismissing the action or proceeding or any part thereof, or rendering a judgment by default against the disobedient party; . . . .

### A. Dismissal of the Claim

The trial court may dismiss a claim under Trial Rule 37(B)(2) for discovery violations. The only limitation on the trial court is that the sanction must be just. *Prime Mortg. USA, Inc. v. Nichols*, 885 N.E.2d 628 (Ind. Ct. App 2008). In determining whether a sanction is just, we recognize that "'[a]lthough a default judgment plays an important role in the maintenance of an orderly, efficient judicial system as a weapon for enforcing compliance with the rules of procedure and for facilitating the speedy determination of litigation, in Indiana there is marked judicial deference for deciding disputes on their merits and for giving parties their day in court . . . .'" *Id.* at 649 (quoting *Charnas v. Estate of Loizos*, 822 N.E.2d 181, 185 (Ind. Ct. App. 2005)).

Dismissal for failures in discovery will *not* be unjust where:

9

(1) the party was given an additional reasonable period within which to respond and was expressly warned in advance that default judgment would be entered if he failed to do so; and (2) no response or request for additional time was timely made and no reason excusing timely response is demonstrated.

*Burns v. St. Mary Med. Ctr.*, 504 N.E.2d 1038, 1039 (Ind. Ct. App. 1987). We also will not find dismissal to be unjust where the actions of the offending party are egregious. Further, although it is common to "fashion progressive sanctions leading up to a dismissal or default judgment when it is possible to do so, imposing intermediate sanctions is not obligatory when a party's behavior is particularly egregious." *Whitaker v. Becker*, 960 N.E.2d 111, 116 (Ind. 2012) (citing *Prime Mortg. USA*, 885 N.E.2d at 649).

While there is no case law explicitly saying what is considered unjust, there have been multiple cases, however, which give guidance and confirm that egregious conditions must exist if dismissal is to be considered just. Dismissal of claims under Trial Rule 37(B) was upheld under the reasoning in *Burns* and includes such cases as *Pfaffenberger*, which is regarded as the "leading and instructional opinion about Trial Rule 37 and the enforcement authority of the trial court." 3 William F. Harvey & Stephen E. Arthur, *Indiana Practice: Rules of Procedure Annotated*, Trial Rule 37 (3d ed. 2011). In *Pfaffenberger*, the Sewer District sent interrogatories and a request for production of documents to the Plaintiffs. 785 N.E.2d at 1182. Over four months later, no responses were given, so the Sewer District filed a motion to compel. The trial court ordered the Plaintiffs to respond before a certain date, and when they did not, the Sewer District filed a motion to dismiss, which was granted by the trial court. *Id.* Thereafter, the trial court

10

reconsidered the dismissal, set it aside, and granted the Plaintiffs an additional sixty days to respond. *Id.* at 1183. The Plaintiffs again failed to respond to the request, and the trial court dismissed the complaint again, this time with prejudice. *Id.*

In reviewing the trial court's decision, we made particular note of the facts that the Plaintiffs never asked for extensions of time and never informed the trial court or the Sewer District that they were having difficulty in responding to discovery. *Id.* at 1185. We found that dismissal was not an abuse of the trial court's discretion because we had "previously held that when the party alleged to have not complied with discovery orders: (1) has been given an additional reasonable period within which to respond (i.e., sixty days); (2) was warned in advance that dismissal or entry of a default judgment would be the penalty for noncompliance (i.e., the prior dismissal); (3) has not timely responded or requested additional time; and (4) has not demonstrated a reason excusing the past noncompliance . . . ," *id.* (citing *Wozniak v. N. Ind. Pub. Serv. Co.*, 620 N.E.2d 33, 35-36 (Ind. Ct. App. 1993), *reh'g denied*, *trans. denied*), dismissal is not clearly against the logic and effects of the facts and circumstances before the trial court.

Another representative case where we upheld dismissal based on Trial Rule 37(B)(2) is *Mallard's Pointe Condominium Association, Inc.*, 859 N.E.2d at 360. In that case, Mallard's Pointe appeared at a deposition that it had received notice of two months before, but it failed to bring subpoenaed documents. *Id.* at 362. L&L Investors filed a motion compelling discovery which was granted by the trial court, giving Mallard's Pointe three months to produce the documents. *Id.* at 363. The order also explicitly stated that "[f]ailure by Mallard's Pointe to comply timely shall result in a default being

11

entered against it on the Complaint filed by Plaintiff." *Id.* Mallard's Pointe did not comply with the discovery order in those three months, and L&L Investors filed a motion for default judgment, which the trial court granted. *Id.*

In reaching our decision in that case, we engaged in the same analysis as in previous cases to determine whether the sanction was just. In finding that it was, we noted that Mallard's Pointe had substantial time to comply with the discovery request, there was an order compelling discovery that gave Mallard's Pointe additional time to comply, the trial court gave warning that failure to comply would result in a dismissal, and Mallard's Pointe did not inform the trial court of any problems it was having in responding to discovery. *Id.* at 365. *Mallard's Pointe*, therefore, is another example of an instance where the discovery violation was so egregious that the trial court did not abuse its discretion in dismissing the complaint.

Additionally, our Supreme Court recently addressed this issue in *Whitaker*, 960 N.E.2d at 111. In *Whitaker*, after a car accident, Becker sent Whitaker interrogatories and a request for production of documents. Whitaker neither responded by the deadline nor asked for an extension of time. After three letters reminding Whitaker that his responses were overdue, Becker filed a motion to compel discovery three months later. *Id.* at 112. The trial court granted the motion and ordered Whitaker to respond in three weeks. *Id.*

Whitaker finally responded to discovery with what he knew were false answers. *Id.* Becker eventually filed a motion for sanctions, to which Whitaker failed to respond. The trial court held a hearing on the motion six months later. The trial court considered

12

lesser sanctions, but after finding that Whitaker had supplied "deceptive interrogatory answers" in "bad faith," it dismissed the complaint. *Id.* at 114. We reversed, finding that attorneys' fees were an adequate sanction. *Whitaker v. Becker*, 946 N.E.2d 51 (Ind. Ct. App. 2011), *trans. granted*.

After granting transfer, our Supreme Court upheld the trial court's dismissal. It held that our case law "confirms the notion that under the appropriate facts a trial court may enter an outright dismissal or default judgment when a party failed to respond to discovery requests on time, the trial court granted an order to compel discovery, and the party violated the order to compel by failing to respond." *Whitaker*, 960 N.E.2d at 116. Finding all of those factors present, the Supreme Court upheld the dismissal of the complaint under Trial Rule 37(B).

A review of the case law on this issue highlights certain facts that create an egregious discovery violation and result in dismissal not being unjust: long delays, a motion to compel, a warning that dismissal is looming, failure to ask for additional time, deception in the information provided in discovery, impairment of the trial court's calendar, and fault on the part of the offending party.

However, none of the appropriate facts justifying dismissal were present in this case. There was no order compelling discovery, no warning that dismissal was looming, and Wright kept the lines of communication open both with opposing counsel and the trial court. *See* Appellant's App. p. 378-95. There were also no long delays in discovery – Wright missed the deadline by three days for her preliminary witness and exhibit lists, eleven days for her final witness and exhibit lists, twenty-four days for her contentions,

13

ten days for her jury instructions, and seventeen days for naming her new expert witness. There was a delay of approximately four months between when Wright knew that Dr. Nash would be unable to testify for medical reasons and when her counsel found and disclosed to opposing counsel a new expert. But the expert was found and retained seventeen days after the discovery deadline and before the status conference that was to determine the trial date. So while there were missed deadlines, there were not the extended delays that are found in the case law. Finally, the trial court notes Wright's frequent requests for continuances as a reason for supporting dismissal; however, failing to request additional time is a factor that the courts hold against a party in deciding these cases.

Overall, after review of the record, this case is dissimilar to those in which we have upheld dismissal. The factors enumerated in *Burns* are not present and the delays were not egregious. While we respect the deference we owe to the trial court's decision, we find that it was unjust to dismiss this case under Trial Rule 37(B).

*B. Striking Wright's Expert Witness*

The other discovery sanction handed down in this case under Trial Rule 37(B) was the striking of Wright's expert. There has been no clear test articulated for deciding this issue in the civil context. Our Supreme Court has addressed this issue and articulated a test in the criminal context, however, in *Wiseheart v. State*, 491 N.E.2d 985 (Ind. 1986). This test has been widely adopted in criminal cases since. *See, e.g.*, *Vasquez v. State*, 868 N.E.2d 473 (Ind. 2007); *Williams v. State*, 714 N.E.2d 644 (Ind. 1999); *Tyson v. State*, 619 N.E.2d 276 (Ind. Ct. App. 1993), *trans. denied*.

14

In *Wiseheart*, on the morning of trial, Wiseheart requested permission to call four witnesses who had not previously been listed during discovery. Wiseheart argued that he was unaware of their existence before trial and that their testimony was material to his defense. *Wiseheart*, 491 N.E.2d at 987. The trial court excluded the witnesses, however, citing Wiseheart's violation of the court's pretrial discovery order. *Id.*

In reversing the trial court's decision, our Supreme Court noted a balancing test of five factors that the court should consider in determining whether a witness should be allowed to testify when his identity is disclosed after discovery has been closed. Those factors included:

> (1) Whether the nature of defendant's violation was trivial or substantial. The trial court should consider when the witness first became known to defense counsel.
> (2) How vital the potential witness' testimony is to the defendant's case. The trial court should determine the significance of the proffered testimony to the defense. Is the testimony relevant and material to the defense or merely cumulative?
> (3) The nature of the prejudice to the State. Does the violation have a deleterious impact on the case prepared by the State?
> (4) Whether less stringent sanctions are appropriate and effective to protect the interests of both the defendant and the State.
> (5) Whether the State will be unduly surprised and prejudiced by the inclusion of the witness' testimony despite the available and reasonable alternative sanctions . . . which can mitigate prejudice to the State by permitting the State to interview the witnesses and conduct further investigation, if necessary.

*Id.* at 991.

We extended this test to the civil context in 2001, when we decided *Davidson v. Perron*, 756 N.E.2d 1007 (Ind. Ct. App. 2001). In *Davidson*, the Defendants filed a motion for summary judgment, and Davidson responded after the discovery deadline and included an affidavit from a previously undisclosed witness, McDowell, in his response.

The Defendants moved to strike the affidavit because it was not divulged until after the discovery cut-off date. The trial court granted the motion. *Id.* at 1013.

In upholding the trial court's striking of the affidavit, we cited to the balancing test in *Wiseheart*. *Id.* at 1013-14. We found that Davidson's disclosure of McDowell as a witness was insufficient, McDowell's testimony was not highly relevant to the case, and admitting McDowell's affidavit would have caused prejudice to the Defendants' case. *Id.* at 1014. After finding the first three of the five factors to be in favor of the court's holding, we held that it was unnecessary to engage in further inquiry and found no abuse of discretion. *Id.*

We find the balancing test of factors articulated in *Wiseheart* to be instructive in deciding whether to strike a party's witness under Trial Rule 37(B). However, the list of factors is not exhaustive. In addition to considering those five factors, after reviewing the case law on this issue, we must also consider: (1) the pattern of conduct that the offending party has engaged in; (2) the importance of the deadline for the court's docket and how close to trial the discovery-rule violation takes place; (3) prior warnings the trial court has given to the offending party; (4) any motions to compel discovery that have been filed against the offending party; (5) whether other sanctions have been implemented; and (6) whether the offending party has provided misleading information in discovery in addition to a failure to respond to discovery requests. Prior cases have helped shape the formulation of these additional factors to consider when evaluating this issue.

For example, in *Brown v. Terre Haute Regional Hospital*, Brown was involved in a car accident and brought a negligence lawsuit against the hospital where he received treatment for his injuries. 537 N.E.2d 54, 56 (Ind. Ct. App. 1989). During discovery, the hospital sent interrogatories to Brown requesting information on his expert witnesses; Brown replied that he had not retained any experts and he never formally supplemented his answers, but he did verbally inform the hospital of five expert witnesses, including Dr. Worth. *Id.* at 57.

A year later and thirteen days before trial, Brown filed a witness list identifying a new expert witness. The hospital deposed the new witness four days before trial. Three days before trial, Brown identified yet another expert witness. Due to the late notification of these witnesses, the hospital filed a motion to exclude the testimony of the two new witnesses or, in the alternative, to continue the trial. *Id.* The trial was continued, and the hospital conducted depositions, including a second deposition of Dr. Worth. Dr. Worth revealed new opinions at the second deposition, so the hospital filed a motion to exclude his testimony. *Id.* at 57-58. The trial court overruled the motion. But when Brown attempted to elicit this opinion at trial, the hospital objected and moved to exclude the testimony. The trial court sustained, striking the testimony of Dr. Worth under Trial Rule 37(B). *Id.*

We upheld the decision of the trial court on appeal, noting Brown's continued lack of cooperation throughout the discovery process. *Id.* at 58. We also found it important that Brown had ample time in which to inform the hospital of the change in Dr. Worth's expert opinion. *Id.* at 58-59. *Brown* emphasizes the importance of considering the

17

pattern of conduct that the offending party has engaged in, prior sanctions, and the importance of the deadline for the court's docket, specifically how close to trial the discovery violation takes place when determining if striking a party's witness was appropriate.

The 2000 case of *Nyby v. Waste Management, Inc.* is also instructive in our analysis. 725 N.E.2d 905 (Ind. Ct. App. 2000), *trans. denied*. The Nybys filed their witness list, and the Defendants moved to bar the testimony of the expert witness because the Nybys did not provide any information about him. The Nybys then filed a revised witness list which included several expert witnesses. The Defendants again moved to bar the testimony because there was no information provided about the experts' expected testimony. *Id.* at 915-16. The trial court denied the Defendants' motion on the condition that the Nybys provide the Defendants and the court within fifteen days "the subject matter upon which the listed experts . . . will be expected to testify, the substance of the facts and opinions to which they are expected to testify, and a summary of the grounds for each opinion." *Id.* at 916. The trial court also indicated that any further discovery violation would result in sanctions. *Id.* Although the Nybys met the deadline, the information provided was insufficient; accordingly, the trial court barred their experts from testifying.

On appeal, we upheld this decision of the trial court, finding that the Nybys both failed to adequately state the facts and opinions to which one of the experts would testify and failed to state a summary of the grounds for each expert opinion. *Id.* at 917. This case illustrates the importance of considering whether the offending party has provided

18

misleading information in discovery. It also is an example of a case where the trial court warns the offending party that dismissal is a possibility if there are any further discovery violations and where the trial court issues an order compelling discovery action on the part of the offending party.

Eight years later, we decided *Franciose v. Jones*, which is also helpful in our review. 907 N.E.2d 139, 149 (Ind. Ct. App. 2009), *trans. denied*. Jones was injured by motorist Franciose while trying to move a disabled vehicle off of the road and sued Franciose for negligence. During trial, the trial court excluded the testimony of a defense witness who failed to appear for his deposition and whose contact information had not been provided before trial. *Id.* at 143.

We upheld the trial court's decision, drawing attention to the fact that Franciose had provided inaccurate contact information for his witness and failed to supplement or correct it for two years. It was this failure to provide accurate information that led to a last-minute deposition that was missed by the witness and the trial court's subsequent decision to strike his testimony. *Id.* at 149-50. This case again evidences the importance of considering the party's truthfulness in the information it provides in discovery. This also shows how the party's pattern of behavior is considered, as Franciose failed to supplement or correct the contact information for a period of two years.

Finally, we addressed this issue in *May v. George*, 910 N.E.2d 818, 820 (Ind. Ct. App. 2009). May was injured by a tree that fell from George's property and sued George for negligence. Two years after the accident, George filed a motion for summary judgment, and May attempted to admit into evidence two affidavits – one from his son,

19

who had been driving behind his father at the time of the accident, and one from a man who lived two or three miles from where the accident occurred and was familiar with the tree that fell. *Id.* at 822. George moved to strike the affidavits because they had not been timely produced in discovery, and the trial court granted the motion. *Id.*

We upheld the trial court's decision, specifically noting that May was aware that his son was going to be a witness for over two years and failed to disclose his identity to George. This failure to disclose undoubtedly had an impact on the parties' litigation strategy, so the trial court acted within its discretion when it struck the affidavits. *Id.* at 826. *May*, like the recent Supreme Court case of *Whitaker*, shows the importance of our consideration of whether the offending party has provided deceptive information in discovery in addition to its failure to respond.

This representative case law provides us with guidance in terms of factors that should be considered when determining if the trial court has abused its discretion in striking a party's witness under Trial Rule 37(B). In addition to the five factors outlined in *Wiseheart*, it is also necessary to consider the six additional factors outlined above.

A review of the case law also shows, however, that while there are cases that deal with this issue, there are certain facts involved here that make this case unlike past cases. There was no warning by the trial court that a discovery sanction was impending, the parties and the court were all aware that Dr. Nash was Wright's initial expert witness even though he did not appear on an official list, and the delay in obtaining a new expert witness was through no fault of Wright. There was no intention to deceive and the identity of the new expert was turned over to Dr. Miller immediately; this is not like the

previous case law in which such a severe sanction was warranted. So while our research shows that we have never reversed the trial court on this issue, there is an outer limit to the trial court's discretion on this issue; that limit has been reached here.

After applying the balancing test of these eleven factors to the present case, we find that the trial court abused its discretion in striking Wright's expert witness. Although Wright did not formally designate Dr. Nash as her initial expert witness to Dr. Miller or the court, based on his affidavit and Wright's responses to interrogatories, both parties were aware that Dr. Nash was acting in that capacity. *See* Appellant's Br. p. 5; Appellant's App. p. 67-68. Wright also did not become aware of her new expert witness, Dr. Bagner, until January 9, 2011, just one day before she disclosed the name of her expert to opposing counsel and the court. Appellant's App. p. 37. Dr. Bagner was essential to Wright's case, as he would be necessary to establish the standard of care in the medical-malpractice claim. There would be no real prejudice or unfair surprise to Dr. Miller by allowing Dr. Bagner to testify – Dr. Miller was aware that Wright would have an expert witness, and without a trial date set, Dr. Miller would have ample time in which to conduct discovery, including deposing Dr. Bagner, and prepare his litigation strategy accordingly. Also, there were less stringent alternatives available in this case, such that the trial court could have sanctioned Wright for her failure to comply with the discovery deadline without taking the drastic measure of striking her expert witness, especially when her missed deadlines had no real detrimental impact on Dr. Miller.

Turning to the remaining factors, we note that Wright did have a history of not meeting the trial court's deadlines, but those delays were not especially egregious. This

21

deadline was not of high importance to the court's docket for this case because no trial date had been set; there can be no delaying a trial that has yet to be put on the court's calendar. The trial court also did not give Wright a warning that any further violations of discovery orders would result in the striking of her expert, nor did it ever file a motion to compel this particular information or issue other sanctions against Wright. Finally, Wright did not provide any misleading information to Dr. Miller or the court – her only offense was a delay in providing discovery.

Applying these considerations to the facts of this case shows that the decision to strike Dr. Bagner as a witness was against the logic and circumstances before the trial court. There were no egregious violations that warranted such a harsh sanction that would essentially eviscerate Wright's case and deny her any meaningful day in court.

Finally, we note that the trial court's order essentially "threw in the kitchen sink" when articulating its rationale for both dismissing Wright's action and striking her expert witness. In addition to noting the missed discovery deadlines, the trial court referred to the fact that Wright asked for extensions of time and continuances, including one that was denied. *Id.* at 357-58. However, asking for extensions of time and continuances is exactly what litigants are encouraged to do when they are unable to meet the trial court's deadlines. Such actions should not have been taken into consideration when coming to this decision to sanction Wright.

We rightfully give great deference to our trial court colleagues in ruling on discovery issues, and we understand the necessity of parties following the trial court's deadlines. However, this case is unlike prior cases where the delays and missed

22

deadlines have been egregious and the sole fault of the offending party – rather, this case consists of short delays and an expert witness who became unavailable for medical reasons. Litigants deserve their day in court, and we do not see that the misconduct here rose to a sufficient level to deny Wright the chance to resolve her claim in court.

We do not mean to suggest or imply by our opinion that the timely observance of pre-trial deadlines is unimportant, only that when all factors are considered, the extent to which Wright failed to comply with several deadlines was not sufficiently onerous or egregious to justify striking her expert and dismissing her claims without warning. We therefore hold that the trial court abused its discretion in striking Wright's expert witness under Trial Rule 37(B). We reverse and remand for further proceedings.

Reversed and remanded.

ROBB, C.J., and NAJAM, J., concur.