In the

# United States Court of Appeals

## For the Seventh Circuit

No. 20-1534

RICHARD SPINNENWEBER,

*Plaintiff-Appellant,*

*v.*

ROBERT LADUCER and
RED RIVER SUPPLY, INC.,

*Defendants-Appellees.*

Appeal from the United States District Court for the
Northern District of Indiana, Hammond Division.
No. 14-cv-101 — **John E. Martin**, *Magistrate Judge.*

ARGUED OCTOBER 29, 2020 — DECIDED DECEMBER 18, 2020

Before FLAUM, KANNE, and HAMILTON, *Circuit Judges.*

KANNE, *Circuit Judge.* In this run-of-the-mill car accident case, Defendants conceded liability, and the parties went to trial over causation and damages. Plaintiff sought compensatory damages for his physical injuries and presented evidence that he suffered whiplash and a possible minor concussion from the crash. He did not seek to recover medical expenses,

lost wages, or punitive damages. And he did not seek damages for mental or emotional injuries.

Nevertheless, the jury awarded Plaintiff a million-dollar verdict. The district court was understandably shocked by this award and, upon motion from Defendants, ordered Plaintiff to either accept a reduced verdict of $250,000 or opt for a new trial. Plaintiff chose a new trial and, through an odd turn of events, ended up with a $0 verdict.

Plaintiff now appeals, arguing that the district court erred in granting the Defendants' motion for remittitur or a new trial. For the following reasons, we affirm.

## I. BACKGROUND

In 2012, Defendant truck driver Robert Laducer rear-ended Plaintiff Richard Spinnenweber's minivan on I-94 in Indiana. Spinnenweber refused medical treatment at the scene. Five days later, Spinnenweber went to an urgent care center to treat neck pain and, possibly, tinnitus (ringing in the ears). Then three months after that, he told his doctor that he was suffering from tinnitus and bouts of short-term memory loss. In total, Spinnenweber visited seventeen medical providers to treat these conditions.

Spinnenweber sued Laducer and Laducer's employer, Defendant Red River Supply, Inc., and sought compensatory damages for the physical injuries that the accident allegedly caused. He did not seek punitive damages; he did not seek to recoup medical costs or lost wages; and he did not make "a claim for psychiatric, psychological, mental, or emotional injuries." Defendants conceded liability. The parties proceeded to trial on "[t]he extent of [Spinnenweber]'s damages caused by the accident."

At trial, none of Spinnenweber's medical providers testified, and Spinnenweber did not put any medical records into evidence. Instead, Spinnenweber himself testified, and he introduced recorded deposition testimony from Defendants' medical expert, Dr. Peter Carney, and from his own friends and family.

Dr. Carney was the only expert that Spinnenweber relied on. He testified that Spinnenweber "clearly had a whiplash injury" from the crash. And "[e]ventually, three months after the accident, he began to complain of mild tinnitus." But Dr. Carney did not relate the alleged tinnitus to the accident.

As for Spinnenweber's alleged head injuries, Dr. Carney opined that "[t]he initial [medical] reports do not talk about any loss of consciousness, any memory problems. He certainly could've had a very mild concussion. It is possible." But Dr. Carney was certain that the accident did not cause any serious head injury. And he did not connect the alleged memory loss to the accident. Instead, he testified that the memory loss could have come from any number of past injuries. Dr. Carney also testified that although a QEEG test (which measures electrical activity in the brain) showed that Spinnenweber had experienced a head injury, the QEEG could not show when that injury occurred.

After the close of evidence, Spinnenweber's counsel told the jury during closing arguments that "[t]he purpose of tort law, of negligence law, is to deter bad conduct so it doesn't repeat. A verdict that isn't proper gives permission to continue the conduct. That's the problem, and that's [Spinnenweber]'s problem." The jury then awarded Spinnenweber $1 million in compensatory damages.

Defendants filed a motion for remittitur or a new trial arguing that the verdict was grossly excessive and unsupported by the evidence. The court granted the motion because "[t]he testimony presented was insufficient to establish that anything other than [Spinnenweber's] temporary whiplash and possible mild concussion were caused by the accident." The court offered Spinnenweber the choice of accepting $250,000 or a new trial.

Spinnenweber, through counsel, declined to accept the remittitur award of $250,000. Counsel for Spinnenweber then advised the court that he would be withdrawing from the case and that Spinnenweber would be proceeding *pro se*.

The court set the matter for a jury trial. Later, the parties jointly moved to withdraw the jury demand. The court granted that motion, and the new trial was scheduled as a bench trial.

At the one-day trial before the court, Spinnenweber presented no evidence and requested an award of $0 in damages, which he described as a "verdict of silence." Defendants moved for a judgment in their favor and against Spinnenweber, which the court granted.

The bizarre nature of these events is not lost on us. But Spinnenweber walked away with the $0 he asked for. And now, represented by counsel, he appeals his final judgment of $0 and the district court's order granting Defendants' motion for remittitur or a new trial.

## II. ANALYSIS

We review the district court's decision for abuse of discretion. *Sommerfield v. Knasiak*, 967 F.3d 617, 622 (7th Cir. 2020). And Indiana law controls whether the jury's award to

Spinnenweber was excessive. *Kaiser v. Johnson & Johnson*, 947 F.3d 996, 1019 (7th Cir. 2020).

This case turns on two questions. First, did the district court abuse its discretion by finding that Spinnenweber's evidence showed that he potentially suffered just whiplash and a mild concussion from the accident? Second, did the district court abuse its discretion by finding that the $1 million verdict for those injuries was so outrageous that it warranted remittitur or a new trial?

To both we answer no.

*A. Scope of Injuries*

Under Indiana negligence law, there must be a "reasonable connection between a defendant's conduct and the damages which a plaintiff has suffered." *Topp v. Leffers*, 838 N.E.2d 1027, 1032 (Ind. Ct. App. 2005) (quoting *Daub v. Daub*, 629 N.E.2d 873, 877 (Ind. Ct. App. 1994)). At minimum, a plaintiff must prove "causation in fact—that is, that the harm would not have occurred 'but for' the defendants' conduct." *Daub*, 629 N.E.2d at 877.

The evidence required to establish causation varies depending on whether the injury is objective or subjective. When an injury is objective—meaning the ailment can be discovered by a physical exam independent of a patient telling a doctor what he feels—"the plaintiff is competent to testify as to the injury and such testimony may be sufficient for the jury to render a verdict without expert medical testimony." *Id.* (citing *Antcliff v. Datzman*, 436 N.E.2d 114, 121 (Ind. Ct. App. 1982); *Morphew v. Morphew*, 419 N.E.2d 770, 771 (Ind. Ct. App. 1981)). But when an injury is subjective—meaning the "complaint or injury is perceived or experienced by a patient … but

is not directly observable by the doctor"—lay "testimony alone [i]s not sufficient to prove causation without expert medical testimony." *Topp*, 838 N.E.2d at 1033 (citing *Daub*, 629 N.E.2d at 877).

Usually, the "causal connection between a permanent condition, an injury and a pre-existing affliction or condition is a complicated medical question," and "testimony of an expert witness on the issue is necessary." *Daub*, 629 N.E.2d at 877–78 (first citing *Noblesville Casting Div. of TRW, Inc. v. Prince*, 438 N.E.2d 722, 732 (Ind. 1982); and then citing *Brown v. Terre Haute Reg'l Hosp.*, 537 N.E.2d 54, 61 (Ind. Ct. App. 1989); *Watson v. Med. Emergency Servs., Corp.*, 532 N.E.2d 1191, 1196 n.2 (Ind. Ct. App. 1989)). For example, in *Daub*, the plaintiff slipped on ice at her in-law's house and sued her in-laws to recover for alleged back injuries. *Id.* at 875. At trial, the plaintiff alone testified about her injuries. *Id.* at 877. After the close of evidence, the trial court granted judgment to the in-laws because the plaintiff did not marshal expert testimony showing that the slip caused her injuries. *Id.* at 876. The Indiana Court of Appeals upheld that decision because "the issue of cause [wa]s not within the understanding of a lay person[ and] testimony of an expert witness on the issue [wa]s necessary." *Id.* at 878. The court further explained that the plaintiff's testimony was "so lacking in probative value on the question of cause in fact that it offer[ed] the jury at best only the mere possibility that her back ailment was in fact caused by the slip." *Id.*

In this case, Dr. Carney's testimony that Spinnenweber "clearly had a whiplash injury" and "certainly could've had a very mild concussion" showed that Spinnenweber could have suffered those injuries from the accident.

But the record evidence did not show that the crash could have caused Spinnenweber's other alleged injuries such as internal brain trauma and tinnitus. Those were subjective injuries because Spinnenweber perceived them, but they were not directly observable by his doctors. And the cause of those injuries involved complicated medical questions (such as the role of pre-existing conditions) that lay testimony alone could not have answered. As in *Daub*, though, no expert testimony or other medical evidence linked Spinnenweber's alleged head injury or tinnitus to the accident. So it would have been conjecture or speculation for the jury to find that the crash caused those ailments.

The district court thus did not abuse its discretion in finding that Spinnenweber's evidence showed that he potentially suffered just whiplash and a mild concussion from the crash.

### B. Excessiveness of Damages

"Indiana courts will not disturb a compensatory-damages award '[i]f there is any evidence in the record which supports the amount of the award, even if it is variable or conflicting.'" *Kaiser*, 947 F.3d at 1019 (alteration in original) (quoting *Sears Roebuck & Co. v. Manuilov*, 742 N.E.2d 453, 462 (Ind. 2001)). Moreover, "[p]hysical and mental pain are, by their very nature, not readily susceptible to qualification and, thus, the jury is given wide latitude in determining these kinds of damages." *Weinberger v. Boyer*, 956 N.E.2d 1095, 1113 (Ind. Ct. App. 2011) (citing *Ritter v. Stanton*, 745 N.E.2d 828, 845 (Ind. Ct. App. 2001)).

Even so, wide latitude is not unlimited discretion. "A damage award must be supported by probative evidence and cannot be based on mere speculation, conjecture, or surmise."

*Abbey Villas Dev. Corp. v. Site Contractors, Inc.*, 716 N.E.2d 91,
101 (Ind. Ct. App. 1999) (quoting *4–D Bldgs., Inc. v. Palmore*,
688 N.E.2d 918, 921 (Ind. Ct. App. 1997)). And a verdict is ex-
cessive if "the amount cannot be explained upon any basis
other than prejudice, passion, partiality, corruption, or some
other improper element." *Parke State Bank v. Akers*, 659 N.E.2d
1031, 1035 (Ind. 1995) (quoting *Fowler v. Campbell*, 612 N.E.2d
596, 603 (Ind. Ct. App. 1993)). "To warrant reversal, the
amount of damages 'must appear to be so outrageous as to
impress the court at "first blush" with its enormity.'" *Kimber-
lin v. DeLong*, 637 N.E.2d 121, 129 (Ind. 1994) (quoting *N.Y.
Cent. R.R. Co. v. Johnson*, 127 N.E.2d 603, 608 (Ind. 1955)).

In the district court's words, "there [wa]s no rational con-
nection between the scant evidence presented and [Spinnen-
weber's] compensatory award of one million dollars"—espe-
cially when Spinnenweber did not seek any medical expenses,
lost wages, or damages for emotional harm. Instead, it ap-
pears that the jury either incorrectly awarded damages for all
of Spinnenweber's injuries—rather than just his whiplash and
concussion—or improperly conflated compensatory and pu-
nitive damages. After all, Spinnenweber's attorney essentially
asked for punitive damages during closing argument by tell-
ing the jurors that "[t]he purpose of tort law, of negligence
law, is to deter bad conduct so it doesn't repeat."

Defendants forfeited any argument that this statement it-
self warranted a new trial. But to avoid any potential confu-
sion, we want to clarify that "[t]ort damages, with the excep-
tion of punitive damages, are intended to make the plaintiff
whole by compensating him or her for any injuries or losses
proximately caused by the defendant." 25 C.J.S. *Damages* § 139
(2020); *accord Ritter*, 745 N.E.2d at 843 ("'Compensation is the

stated goal of a court when measuring damages for personal injuries.' The question, as is so frequently raised in personal injury actions, is how much money reasonably compensates the [plaintiffs] for their injuries and pain and suffering." (citation omitted) (citing *Kavanagh v. Butorac*, 221 N.E.2d 824, 828 (1966))).

Given the whiplash and mild concussion for which the jury could have awarded compensatory damages to Spinnenweber, the district court did not abuse its discretion in finding that the $1 million verdict was outrageous and then granting Defendants' motion for remittitur or a new trial.

Spinnenweber's counterargument focuses on damages awards in comparator cases. "While these comparisons are relevant to the federal standard, Indiana courts heavily disfavor 'comparative analysis' when reviewing a damages award." *Kaiser*, 947 F.3d at 1019 (citations omitted) (first citing *E.E.O.C. v. AutoZone, Inc.*, 707 F.3d 824, 834 (7th Cir. 2013); and then citing *Weinberger*, 956 N.E.2d at 1114). We therefore do not address the comparison cases that the parties cite in their briefs. *Weinberger*, 956 N.E.2d at 1114 ("While it may be tempting to engage in a comparative analysis to aid us in the difficult task of evaluating the award at issue in this case, to do so would be a significant departure from Indiana's historical regard for the uniqueness of every tort claim and the belief that compensatory damage assessments should be individualized and within the province of the factfinder.").

We recognize that the result of our decision is that Spinnenweber gets no money on a claim for which Defendants conceded liability and indisputably owed him something—in the district court's eyes, as much as $250,000. But

Spinnenweber was hoisted with his own petard. He did not have to seek $0 in his second trial, and we can't change that he did.

### III. CONCLUSION

We AFFIRM the decision of the district court granting Defendants motion for a new trial or a reduced verdict and the district court's final judgment of $0.